**692**

In re Roger B. BERGESON and Diane K. Bergeson d/b/a Hursh's Steak and Pizza, Debtors.

Lino A. MARSILLO, Trustee, Plaintiff,

v.

NATIONAL SURETY CORPORATION, an Illinois corporation, and Western States Insurance Agency, Inc., a Montana corporation, Defendants.

No. CV 84–232–M–CCL.

United States District Court,
D. Montana,
Missoula Division.

Nov. 7, 1986.

William A. Rossbach, Missoula, Mont., for plaintiff.

Patrick G. Frank, Worden, Thane & Haines, Missoula, Mont., for defendant Western States Ins.

Shelton C. Williams, Williams Law Firm, Missoula, Mont., for defendant Nat. Sur. Corp.

Susan P. Roy, Garlington, Lohn & Robinson, Missoula, Mont., for First State Bank Southside and First State Bank Western.

## MEMORANDUM AND ORDER

LOVELL, District Judge.

This action arises out of a fire which destroyed the place of business of Debtors Roger and Diane Bergeson on June 12, 1982. At the time of the fire the debtors,

who were then undergoing reorganization pursuant to Chapter 11 of the United States Bankruptcy Code, were insured by defendant National Surety Corporation (National). The policy of insurance contained a "business interruption" clause, which allegedly covered loss of income and additional expense resulting from debtors' inability to operate the business following the fire.

The complaint, filed by the bankruptcy trustee, alleges that National failed to fulfill its obligations under the business interruption clause of the policy and acted in bad faith in refusing to tender the full amount of coverage to debtors, as a result of which debtors were forced to convert their Chapter 11 Reorganization into a Chapter 7 liquidation under the Bankruptcy Code. Plaintiff seeks actual damages on behalf of the estate for breach of the policy, actual fraud, constructive fraud, and bad faith, as well as punitive damages for National's alleged willful, wanton and oppressive conduct.

In his claim for breach of the duty of good faith and fair dealing, the Trustee alleges that National acted in bad faith in the following particulars:

1. Misrepresenting the benefits, advantages, conditions, or terms of the insurance policy;

2. Neglecting to attempt in good faith to effectuate prompt, fair, and equitable settlement of the claim, for which liability had become reasonably clear;

3. Compelling debtors to institute litigation to recover amounts due under the policy by offering substantially less than the amounts ultimately recovered in actions brought by the insured;

4. Failing promptly to pay claims, for which liability was reasonably clear, in order to influence settlement under other portions of the insurance policy coverage; and

5. Refusing to make payment under the business interruption coverage for the period when debtors were unable to reopen their business due to alleged actions of National.

Before the Court are several discovery motions between the parties, as well as motions by non-parties to quash certain subpoenaes. It appears as though a virtual impasse has been reached in the discovery process, and thus the Court will attempt to untangle the various difficulties in turn.

*Motions to Quash*

First Bank Southside and First Bank Western (collectively referred to as "First Bank") moved the Court for an order against National quashing a subpoena issued on July 2, 1986, and protecting the Records Custodian from appearing at a deposition and producing certain documents. First Bank asserted as grounds for this motion lack of relevancy, lack of need, and lack of proper service.

National thereafter had the subpoena reissued and effected proper service upon First Bank. The Bank then filed a second motion to quash the subpoena issued on July 28, 1986, along with objections to inspection and copying.

A third motion to quash was filed by First Bank Southside after a former records custodian was subpoenaed by National to appear for deposition.

National claims that a central issue in the case is the viability of Hursh's Steak & Pizza as a business during the time period in question, as is the personal financial condition of the debtors, and that debtors' banking records are thus relevant discovery material. National's counsel, by affidavit, asserts that he has learned that the debtors' business was being monitored by First Bank, but that he does not know exactly what documents and information were provided in conjunction therewith. He claims that National needs access to this information to defend properly the claims asserted by the Trustee in this action.

First Bank asserts that National's subpoenaes, requesting "all" of the Bank's files relating to the debtors, constitute

nothing more than a fishing expedition into the Bank's records. The Bank claims that National has made no attempt to obtain such records from the debtors themselves, and has shown no need to require their production by the Bank. First Bank states that its relationship as a creditor of the Bergesons terminated on April 1, 1982, when the Chapter 11 petition was filed. Because the fire did not occur until June 12, 1982, the Bank claims that National's request pertains to a time period irrelevant to the issues in this action. Finally, First Bank opines that production of its files may prejudice its defense in a separate action filed by debtors against the Bank in this Court.

Subpoenaes for production of documentary evidence are governed by Rule 45(b), Fed.R.Civ.P., which allows a party, in conjunction with a subpoena for attendance of witnesses, to command the person to whom it is directed to produce such books, papers, documents, or tangible things as are described therein. A subpoena issued for the taking of a deposition may also command the production of documentary evidence. Fed.R.Civ.P. 45(d). In that event, the person to whom the subpoena is directed may serve written objections to inspection or copying of any or all designated materials within 10 days after the subpoena is served.

In this case, First Bank served written objections to inspection and copying of all material sought by National, as well as a motion to quash the subpoenas pursuant to Rule 45(b)(1). Even though First Bank is not a party to this action, it bears the burden of proving that the subpoena should be quashed. *Sullivan v. Dickson*, 283 F.2d 725 (9th Cir.1960), *cert. denied*, 368 U.S. 884, 82 S.Ct. 127, 7 L.Ed.2d 84, *reh'g denied*, 368 U.S. 962, 82 S.Ct. 400, 7 L.Ed.2d 394. Rule 45(b) authorizes the Court to quash a subpoena only if it is unreasonable and oppressive. *Goodman v. United States*, 369 F.2d 166, 169 (9th Cir. 1966); *Premium Service Corp. v. Sperry & Hutchison Co.*, 511 F.2d 225, 229 (9th Cir.1975).

From the record as presented, the Court cannot conclude that the subpoenas directed to First Bank and its agents are unreasonable or oppressive. The Bank has not claimed any hardship it will suffer insofar as actually retrieving and producing the files. The argument that the material is irrelevant is unpersuasive in view of the liberal interpretation given discovery. The debtors' financial condition is certainly relevant to the issue of loss sustained, and thus production of the Bank files may lead to the discovery of admissible evidence.

Additionally, the Bank has cited no authority for its position that the subpoenas must be quashed as oppressive. The fact that First Bank is involved in another lawsuit against the Bergesons does not necessarily make production of its records unreasonable in this suit. Certainly, if the Bank seeks to withhold certain documents which are privileged or unduly prejudicial, the Court will entertain an independent request for a protective order directed to those particular documents, and will conduct an in camera review to determine which items may be withheld. The mere possibility that a claim of privilege may arise is not, however, a sufficient ground on which to quash a subpoena. *Goodman v. United States*, 369 F.2d at 169.

Finally, although the Court may limit discovery if it is unreasonably cumulative or obtainable from some other source that is more convenient, less burdensome, or less expensive, Fed.R.Civ.P. 26(b)(1), bank records are uniquely available from the Bank. At this juncture, the Bank has only made conclusory assertions that the documents sought are available from others more economically than from the Bank. This does not constitute a showing of unreasonableness or oppressiveness.

The Court notes that sweeping requests for documents, requiring extensive shifting and analysis by a non-party and constituting a general fishing expedition, will be subject to a motion to quash. *Premium Service Corp. v. Sperry & Hutchi-*

*son Co.*, 511 F.2d at 229. In these circumstances, the Court must find the need for the documents sufficient to outweigh the burden and invasion of corporate privacy. *Id.* Here, such a balance favors disclosure. The Court has indicated its willingness to modify the subpoena upon a showing that particular documents are not subject to production.

### Plaintiff's Motion to Compel

Plaintiff moves for an order requiring National to answer certain interrogatories, to permit inspection of documents, and to answer questions asked upon deposition by oral examination. National maintains that the information sought by plaintiff is protected by the attorney-client privilege or the work product doctrine, or that it is irrelevant.

National objected to Interrogatories 8 and 9 of plaintiff's first set of interrogatories as irrelevant and not calculated to lead to the discovery of admissible evidence. The questions requested National to disclose the amount of its gross assets and net income or loss for each of the last five fiscal years. National did answer Interrogatory 7, which requested the amount of its net worth for each of the last five fiscal years.

█ Under applicable Montana law, evidence of a defendant's net worth may be considered for an award of punitive damages, although such evidence may not be presented to a jury until a prima facie case for punitive damages has been established. Mont.Code Ann. § 27–1–221(4). Plaintiff seeks punitive damages from National in this case. Although National has disclosed its actual net worth, evidence of net income and gross assets may be valuable in evaluating a claim for punitive damages, because such evidence will reveal a clearer picture of National's worth. The Court reserves ruling as to whether such evidence will be admitted at trial.

█ To protect National from prejudice or competitive disadvantage, any net worth information disclosed pursuant to this order shall be kept in strict confidence by plaintiff's counsel and shall not be disseminated until such time, if any, as the Court rules it to be admissible at trial.

The principal dispute surrounding plaintiff's motion is whether or not the claims file National kept on the Bergesons during negotiation of their policy claims may be discovered by plaintiff in this action. In requests for production of documents, and during the deposition of Ted Thompson, National's attorney at the time settlement of the claim was being pursued, plaintiff sought disclosure of the entire claims file. Portions have been produced, but the remainder withheld on grounds of work product or attorney-client privilege.

> The purpose of discovery is to promote the ascertainment of truth and the ultimate disposition of the lawsuit in accordance therewith. Discovery fulfills this purpose by assuring the mutual knowledge of all relevant facts gathered by both parties which are essential to proper litigation.

*Massaro v. Dunham*, 184 Mont. 400, 405, 603 P.2d 249, 252 (1979). Rule 26(b), Fed. R.Civ.P., defines the scope and limitations of discovery. The attorney-client privilege and work product rule are both limitations on certain discovery.

Nearly twenty-five years ago, in a "failure to settle" case, the Hon. William J. Jameson ruled that six factors were to be considered in determining whether an insurance company has acted in bad faith with respect to the interests of its insured:

(1) whether a verdict is likely to be greatly in excess of policy limits;

(2) whether the facts indicate that a defense verdict on the issue of liability is doubtful;

(3) whether the company has given due regard to the recommendations of its trial counsel;

(4) whether the insured has been informed of all settlement demands and offers;

(5) whether the insured has demanded that the insurer settle within policy limits; and

(6) whether the company has given due consideration to any offer of contribution by the insured.

*Jessen v. O'Daniel*, 210 F.Supp. 317 (D.Mont.1962), *aff'd sub nom., National Farmers Union Prop. & Cas. Co. v. O'Daniel*, 329 F.2d 60 (9th Cir.1964). These factors recently have been reaffirmed and applied by the Montana Supreme Court in a failure to settle case. *Gibson v. Western Fire Ins. Co.*, — Mont. —, 682 P.2d 725 (1984).

Obviously, several of the six factors are irrelevant in a case challenging the insurance company's failure to pay a claim to its insured where no third party is involved. On the other hand, both situations arise out of "first-party" bad faith, an action by the insured against the insurer. In any first party bad faith action, the pivotal inquiry is the manner in which the insurance company processed the claim involving its insured.

■ In a first party bad faith case such as this, where the insurance company has refused to pay benefits claimed under the policy, the critical issue is whether the company had a good faith basis for its decision. This in turn requires a number of other inquiries, including the substance of any investigations conducted by the insurer, the information available to the company at the time its decision was made, and the manner in which the company arrived at its decision, including reliance on advice of counsel. The insurance company's claims file constitutes the only source of this information. Clearly, it is "relevant to the subject matter involved in the pending action" and "reasonably calculated to lead to the discovery of admissible evidence." Fed.R. Civ.P. 26(b)(1).

The only issue then is whether particular documents within the claims file were prepared in anticipation of litigation or fall within the attorney client privilege and, if so, whether they may be withheld from discovery. The Court finds ample authority to support a ruling that the claims file should be disclosed in a bad faith action against an insurance carrier. *See Gibson*

*v. Western Fire Ins. Co.*, — Mont. —, 682 P.2d 725 (1984) (references in opinion indicate complete access to claims file, including attorney-client correspondence); *Caldwell v. District Court in and for the City and County of Denver*, — Colo. —, 644 P.2d 26 (1982); *Brown v. Superior Court in and for Maricopa County*, 137 Ariz. 327, 670 P.2d 725 (1983); *United Services Automobile Assn v. Werley*, 526 P.2d 28 (Alaska 1974). As stated by the Supreme Court of Arizona in *Brown:*

> [B]ad faith actions against an insurer, like actions by client against attorney, patient against doctor, can only be proved by showing exactly how the company processed the claim, how thoroughly it was considered and why the company took the action it did. The claims file is a unique, contemporaneously prepared history of the company's handling of the claim; in an action such as this the need for the information in the file is not only substantial, but overwhelming.

*Brown*, 670 P.2d at 734.

This Court agrees that the insurance company's claims file is permissible discovery in a bad faith action brought by its insured for failure to pay a claim. In this case, however, the underlying dispute over insurance coverage has not yet been resolved: Under Count One of the complaint, plaintiff seeks over $50,000 damages for breach of the "business interruption" clause of the policy. For the claims file to be discoverable, the underlying claim must first be resolved, either by settlement or litigation. Otherwise, privileged material may be disclosed which would jeopardize the insurance company's defense.

■ Given the need for complete discovery to be afforded to all parties to the action, the interest of justice would best be served by bifurcating the bad faith claims from the remainder of the case and determining the liability issue first. Following resolution of the underlying policy claim, plaintiff shall have access to the entire claims file for inspection and copying, and the case shall proceed on the issue of National's bad faith.

*Defendant's Motions to Compel and for Protective Order*

National moves the Court for an order requiring the plaintiff to answer certain interrogatories and requests for admission. Many of the subject interrogatories were answered with qualifications that certain documents or information had not yet been made available to the debtors but that answers would be supplemented. National asks the Court to require such supplementation because it has been over one year since the interrogatories were served.

Other interrogatories and requests relate to expert witnesses consulted by plaintiff, both those expected to testify and not expected to testify, and financial information and documentation relating to the debtors' place of business.

 The Court does not find any of the interrogatories propounded by National to be particularly novel or unduly complex. It appears that in most instances the debtors supplied the best response available to them at the time. With respect to the questions on experts, Rule 26(b)(4), Fed.R. Civ.P., is clear on its face and provides the parameters for legitimate discovery into that area. When addressing the interrogatories directed to experts and attorneys consulted, plaintiff must supply the best answer he has, but is not required to disclose any privileged information.

National's motion for protective order concerns depositions, the taking of which may be postponed by the Court's bifurcation decision. To the extent the depositions remain scheduled, however, National's motion is not well taken. Competent counsel dealing with an insurance interpretation-of-policy case ought to be able to schedule the depositions of designated corporate agents who have sufficient knowledge to answer the questions put to them. National's only objections to the scheduled depositions were the language in which the notice was framed and the date on which the depositions were scheduled. Surely a simple phone call and common courtesy between counsel could resolve difficulties of this sort without Court mediation.

The Court is confident that any discovery problems not immediately addressed in this opinion can be resolved by agreement of counsel. The parties would be well advised to approach the discovery process with a greater spirit of cooperation, and to work together to settle their differences. The Court is not eager to use its time to monitor discovery.

Based upon the foregoing discussion, IT IS HEREBY ORDERED:

1. The motions to quash by First Bank Southside, First Bank Western, and their agents or employees are DENIED with leave to refile for modification of the subpoenaes upon a showing that particular documents are not subject to production.

2. Plaintiff's motion to compel discovery is GRANTED. However, all further discovery relating to claims of bad faith against National Surety Corporation is STAYED pending resolution of the underlying claim on the policy.

3. Pursuant to Fed.R.Civ.P. 42(b), all claims of bad faith against either defendant shall be severed for purposes of trial, and all further proceedings on such claims stayed pending resolution of the underlying claim on the policy.

4. Defendant National Surety Corporation's motion for protective order and motion to compel discovery are DENIED, with the admonition that counsel shall attempt to resolve these difficulties between themselves. If further discovery problems arise, the motions may be resubmitted for hearing. Unnecessary delay or unreasonable conduct in the discovery process may subject the party engaging therein to sanctions and payment of costs.