Rosa Lee RING, d/b/a Rings Hardware, Plaintiff,

v.

COMMERCIAL UNION INSURANCE COMPANY and Employers Fire Insurance Company, Defendants.

No. 2:94CV00114.

United States District Court, M.D. North Carolina, Rockingham Division.

Jan. 6, 1995.

Harold Franklin Greeson, Greeson, Griffin & Associates, Christopher Clark Kessler, Harold F. Greeson, Greensboro, NC, for plaintiff Rosa Lee Ring dba Rings Hardware.

Walter E. Brock, Jr., Carolyn Sprinthall Knaut, Young, Moore, Henderson & Alvis, P.A., Raleigh, NC, for defendants Commercial Union Ins. Co., Employers Fire Ins. Co.

## *ORDER*

ELIASON, United States Magistrate Judge.

This matter comes before the Court on plaintiff's motion to compel discovery from defendants. Plaintiff owned a hardware store which sustained a fire loss on or about October 12, 1991. The structure and its contents were destroyed by fire. Defendants provided insurance for the building and its contents. Plaintiff was indicted on March 16, 1992 on charges of setting fire to the store and filing false claims. She was tried and acquitted in December 1992. Prior to that and on April 3, 1992, defendants denied plaintiff's claim for the losses. In 1994, plaintiff filed this action to recover under the insurance contract and also alleges that defendants' denial of her claim was made in bad faith.

Plaintiff seeks to discover the contents of 154 documents in defendants' insurance claims file generated as a result of the fire. Defendants are willing to provide documents generated as a result of investigations up to and including October 17, 1991, but not thereafter. Defendants argue that from that time forward they anticipated litigation with respect to plaintiff's fire loss claim and, therefore, discovery should be denied on that basis. Fed.R.Civ.P. 26(b)(3). Defendants also assert attorney-client privilege with respect to some documents.

Plaintiff counters that defendants fail to establish that they anticipated litigation at such an early date. Plaintiff shows she did not submit her sworn statement of proof of loss until on or about December 14, 1991 and that defendants did not deny her claim and accuse her of burning her store until on or about April 3, 1992. In addition, plaintiff argues that defendants have failed to prove the documents retained were prepared in anticipation of litigation as opposed to in the ordinary course of business.

In order to establish their claim of "anticipation of litigation," defendants had their adjuster (Robert Lilley), who investigated plaintiff's loss, file an affidavit. This affidavit shows the following facts. On or about October 12, 1991 plaintiff's hardware store in Liberty, North Carolina, was destroyed by fire. The loss was reported to the insurance agent the following Monday, October 14, 1991. When Mr. Lilley received the call, he was told that kerosene had been observed coming out from the back door of the building and that the insured had been observed leaving the building just before the fire was discovered. He also found out that plaintiff was in bankruptcy and the property had been listed for sale by the insured two hours before the fire at a price far less than the insured's limit.

Mr. Lilley indicates that the above facts immediately raised concerns that the fire had been deliberately set. Consequently, he inspected the premises on October 16, 1991. He further states that he hired a cause and origin expert to investigate the cause of the fire. When he arrived at the store on October 16, Mr. Lilley was concerned because of the lack of merchandise in the store and the bare shelves. This further raised his suspicion that the fire was deliberately set by plaintiff. An interview with plaintiff's insurance agent confirmed that plaintiff had left the building only moments before the discovery of the fire and that plaintiff was having financial difficulties before the fire.

Another fact which concerned Mr. Lilley was that plaintiff was already represented by an attorney and that when he met with plaintiff on either October 16 or October 17, plaintiff declined to answer any questions regarding the origin of the fire, stating she had been advised to do so by her attorney. Mr. Lilley states that he has never encountered a situation where an insured immediately hired an attorney after a fortuitous property loss, as opposed to when the fire was intentionally set. In addition, Mr. Lilley learned that plaintiff was approximately six months late on her mortgage payments and was currently in Chapter 11 bankruptcy.

Mr. Lilley further reported that he spoke with the S.B.I. agent that week and was told that kerosene was on the floor in the rear of the building and that the power, lights and electricity had been cut off prior to the fire. There was not any evidence of forced entry and in the agent's opinion the fire was incendiary and originated on the inside of the building, near the back door. Likewise, a discussion with the Liberty, North Carolina, police investigator revealed that the police also believed that the fire was deliberately set. The cause and origin investigator hired by defendants further confirmed the fire was incendiary in origin and originated near the back door.

Mr. Lilley states that in a normal property loss case, he meets with the insured and questions the insured concerning the loss. Formal statements are not taken, nor does he investigate the financial condition of the insured or direct investigators to take statements of witnesses. However, when he believes arson is involved, he proceeds with the expectation that eventually litigation will result.

In the instant case, Mr. Lilly claims that the actions he took fit the pattern of his arson investigation. In addition, on October 22, 1991, he retained Attorney Walter Brock to represent the defendants and render legal advice concerning the investigation. Normally, counsel is not retained to investigate any claim unless litigation may result. In this case, counsel was directed to provide legal advice concerning the investigation and various legal matters as opposed to handling or controlling the investigation. Mr. Brock sets out his duties in an affidavit. He rendered legal advice concerning the loss and suspected fraud and/or arson, including the decision to allow or deny the claim.

## I. Discussion

### A. Anticipation of Litigation

In *Pete Rinaldi's Fast Foods v. Great American Ins.*, 123 F.R.D. 198 (M.D.N.C.1988), the Court had a chance to visit the question of how to apply the principles of work product protection in a case involving an insurance company. There, it was noted that the court applies federal law even in diversity cases such as the instant one. *Id.* at 201. To establish work product protection, the proponents, in this case the defendants, have the burden of establishing that the documents withheld were prepared in anticipation of litigation or for trial by and for the party or the party's representative. *Id.* Of course, even if litigation is anticipated, documents prepared in the regular course of business will not merit protection. *Id.* In making this determination, the Court must:

> consider the nature of the documents, the nature of the litigation, the relationship between the parties, and any other fact peculiar to the case. Involvement of an attorney is a highly relevant but not necessarily controlling factor. [citation omitted]

*Id.* at 202.

An insurance company cannot reasonably argue that in most instances the entirety of its claims file was accumulated in anticipation of litigation with its insured. That is because the insurer owes a duty to the insured to make a decision with respect to claims made by its insured. *Id.*[1] Consequently, the general rule is that a reasonable possibility of litigation only arises after an insurance company has made a decision with respect to the claim of its insured. Therefore, and in general, only documents accumulated after the claim denial will be done in anticipation of litigation. *Id.* When an insurer seeks to argue that the threat of litigation appeared at an earlier time, it must bear the burden of persuasion by presenting specific proof demonstrating a resolve to litigate. *Id.*

In the instant case, defendants meet their burden with affidavits and demonstrate that they anticipated litigation with plaintiff almost immediately after they began their investigation. First, two law enforcement agencies and an independent investigator indicated to defendants that the fire was of an incendiary nature and had been deliberately set. Plaintiff was seen leaving the premises shortly before the fire. Moreover, plaintiff's financial situation, including the bankruptcy filing, provided a possible motive for plaintiff to start the fire. These facts alone provide evidence of an objective basis for concluding defendants anticipated litigation with plaintiff by October 17, 1991.

In addition, plaintiff had already retained an attorney with respect to the matter. While litigation cannot be said to be imminent merely because the insurer is represented by an attorney, *id.* at 203 n. 5, in this case suspicion that plaintiff set the fire already existed which makes plaintiff's hiring an attorney relevant here. And, significantly, plaintiff refused to discuss the loss with defendants. From this, one may conclude that by October 17, 1991, even in plaintiff's mind litigation of some sort might be likely as a result of the fire. For example, if plaintiff was fearful of criminal charges being filed against her, this clearly demonstrates that a reasonable person in defendants' shoes would anticipate litigation with plaintiff as well. Plaintiff has not rebutted these natural inferences.

Other facts also demonstrate that defendants' claim of anticipation of litigation prior to defendants' denial of plaintiff's fire loss claim is not an after-the-fact rationalization. Defendants hired their own attorney only a few days later, on October 22, 1991. They further show that hiring an attorney is not routine but only occurs when litigation is anticipated. The attorney was hired to render legal advice as opposed to providing routine insurance investigation. The only weak-

---

1. This is the general rule in a first-party insurance case such as the instant one, where the insured sues his or her own insurance company. However, the situation is different in a third-party insurance case where a person other than the insured sues the insurance company. *See* *Baker v. CNA Ins. Co.*, 123 F.R.D. 322 (D.Mont. 1988). In the latter situation, such as where the insurer is investigating an accident caused by its insured, litigation may be anticipated very early on in the investigation.

ness in defendants' presentation is their failure to explain why they waited from October 17, 1991 to April 3, 1992 to deny plaintiff's claim. In other circumstances such an oversight could be fatal to an insurer's position. However, in the instant case, defendants present strong objective facts indicating an anticipation of litigation by October 17, 1991, corroborated by outside sources. Also, the Court can by inference conclude that the additional formal questioning and interviewing of witnesses necessitated by the "arson" investigation was more time consuming than an ordinary investigation. In light of these considerations, the 5½ month delay from October 17, 1991 to the April 3, 1992 claim denial, while disturbing, is not so great so as to alone cast doubt on the reasonableness of defendants' assertions.

Defendants have demonstrated by objective facts, by their own actions and by the actions of plaintiff, that litigation was reasonably anticipated by October 17, 1991. It appears that only documents generated after that date have been withheld, with the exception of document no. 77, the daily report of investigator John Pope. However, the entry for October 17, 1991 merely shows that he was retained on that date and all entries thereafter are subsequent to that time.

### B. Bad Faith Allegations and the Insurers' Claims File

■ Plaintiff next argues that she is entitled to review defendants' claims file because she has alleged defendants' bad faith failure to settle her insurance claim. She asserts she has a right to defendants' claims file because she otherwise cannot prove her case, citing *In re Bergeson*, 112 F.R.D. 692 (D.Mont.1986), and *Silva v. Fire Ins. Exchange*, 112 F.R.D. 699 (D.Mont.1986), and cases cited therein. In *Bergeson*, the court held that until the underlying contract claim was resolved, the claims file should be protected. It bifurcated the bad faith claim from the contract underlying claim until the latter was resolved. In *Silva*, the only claim present was the one for bad faith. However, in the instant case, the underlying contract claim is both present and unresolved.

A number of state courts would concur with the holding of the Montana federal court. In *Corrente v. Fitchburg Mut. Fire Ins. Co.*, 557 A.2d 859 (R.I.1989), the court held that even if a discovery issue is not involved, it was inherently prejudicial for a court to decline to sever a bad faith claim from the breach of contract claim. *See Schmidt v. California State Auto. Ass'n*, 127 F.R.D. 182 (D.Nev.1989); *see also State Farm Mut. Auto. Ins. Co. v. Shrader*, 882 P.2d 813 (Wyo.1994); *Tackett v. State Farm Fire and Cas.*, 558 A.2d 1098 (Del.Super.1988), *and see Escalante v. Sentry Ins.*, 49 Wash.App. 375, 743 P.2d 832 (1987), *rev. denied*, 109 Wash.2d 1025 (1988) (opinion work product discoverable in bad faith action). However, other courts have rejected this rule, including the Supreme Court of Montana. In *State ex rel. U.S. Fidelity and Guar. Co. v. Montana Second Judicial Dist. Court.*, 240 Mont. 5, 783 P.2d 911 (1989), that court stated agreement with the Supreme Court of Florida in *Kujawa v. Manhattan Nat. Life Ins. Co.*, 541 So.2d 1168 (Fla.1989). The Montana Supreme Court, as did the Florida Supreme Court, found no evidence that the creation of a bad faith cause of action evinced any intent on the part of the legislature to abolish the attorney-client privilege or work product protection. The Court finds the reasonings of these latter courts to be more persuasive.

■ While arguably it may be more difficult to prove a claim of bad faith failure to settle without examining an insurance company's claims file, that does not mean it is impossible. In fact, in order to make such an assertion, Fed.R.Civ.P. 11 requires that plaintiff have a reasonable basis in fact for it. Furthermore, plaintiff can thoroughly depose and examine the defendants' adjuster to find out all of his actions and decisions leading to the denial of the claim. Work product protection only shields the documents produced in anticipation of litigation, not the facts.

Second, when, as here, the complaint involves both the underlying contract claim and an allegation of bad faith failure to settle, the decision in *Bergeson* to bifurcate out the bad faith claim is one solution. The disadvantage is that two periods of discovery and two

trials may be necessary. This can be expensive and time consuming. Therefore, the Court finds that option to be one used as a last resort.

■ Instead, the Court considers it better to require that the discovery of the underlying contract claim and the bad faith claim proceed at the same time with the view that there will be one trial. In this context, plaintiff can obtain defendants' work product in the usual manner by showing both a substantial need to review the claims file in order to corroborate her bad faith claim and an inability to secure substantial equivalent of the materials by alternative means. Fed. R.Civ.P. 26(b)(3); *In re Grand Jury Proceedings,* 33 F.3d 342, 348 (4th Cir.1994). In demonstrating such need, what this Court said in *Marker v. Union Fidelity Life Ins. Co.,* 125 F.R.D. 121, 125 (M.D.N.C.1989), although in a different context, is relevant:

> Mere incantations that an opponent has acted in bad faith will not convert a simple contract lawsuit into a license to burden or harass one's adversary. Conclusory claims of bad faith may not be the basis for conducting marginally relevant discovery which is by its nature burdensome.

125 F.R.D. at 125.

In the instant case, plaintiff fails to marshall enough evidence demonstrating a *prima facie* case of bad faith to be permitted to rummage through defendants' claims file. Aside from plaintiff's conclusory allegation of bad faith in the complaint, the only fact which seems to support plaintiff's contention is that defendants waited 5½ months to deny her claim.[2] This does not sufficiently show bad faith under the facts of this case as previously recounted. Nor does plaintiff's subsequent acquittal on criminal charges and defendants' continued denial of her claim add sufficient facts to demonstrate a *prima facie* case of bad faith, so as to permit invasion of defendants' work product.

Thus, the Court finds that plaintiff has failed to make a sufficient showing of bad faith to obtain defendants' work product in

their claims file, must less the opinion work product. It is noted that defendants have not relied on advice of counsel as a defense which might cause the Court to reconsider its position. *See Charlotte Motor Speedway, Inc. v. International Ins. Co.,* 125 F.R.D. 127 (M.D.N.C.1989). To the extent plaintiff seeks the information relied upon by the insurer in declining her claim in order to prove bad faith, she must ask those questions directly of the adjuster. While plaintiff may well desire to have defendants' claims file in order to impeach the adjuster and/or corroborate her allegation of bad faith denial of her insurance claim, she cannot have it based on mere conclusory allegations. Were it otherwise, insurers could be deprived of work product protection, or else the Court would have to bifurcate discovery and trial, in all cases by mere allegations of bad faith, however frivolous. The Court does not feel that such results in the instant case are either necessary or the proper approach.

### C. Opinion Work Product

■ Next, plaintiff argues that she is entitled to defendants' opinion work product. She argues that this Court should adopt the policy set out in *Mission Nat. Ins. Co. v. Lilly,* 112 F.R.D. 160, 163 (D.Minn.1986). In that case, the court indicated that it would not permit an insurance company to cloak its routine business investigation of claims by retaining an attorney. However, that case is inapposite to the instant situation. In this case, the attorney did not conduct or control the investigation. This is established by defendants' affidavits. The Court's review of the undisclosed documents does not disclose any contrary indication. Rather, the facts show that the attorney provided legal advice to defendants and defendants' adjusters.

■ Moreover, the Fourth Circuit has held that opinion work product is nearly inviolable. *In re Grand Jury Proceedings,* 33 F.3d 342; *Pete Rinaldi,* 123 F.R.D. at 204 n. 7. The Fourth Circuit has made it clear that not only does opinion work product deserve far more protection than ordinary re-

---

**2.** In *Tackett v. State Farm Fire and Cas.,* 558 A.2d 1098 (Del.Super.1988), the court opined that an eight month delay alone was sufficient to estab-

lish a cause of action for bad faith processing of a claim.

quests for work product, but also that both the attorney and the client can claim work product protection. One caveat to this rule arises under the crime-fraud exception. But in order to come under that exception, the plaintiff would have to make out a *prima facie* case of defendants' crime or fraud and the attorney's complicity. *In re Grand Jury Proceedings, supra. See Marker v. Union Fidelity Life Ins. Co., supra.* Plaintiff fails to make this showing.[3]

In summary, plaintiff cannot have the documents memorializing defendants' or their attorney's regular or opinion work product. However, the facts themselves and the bases for defendants' defenses are not privileged and plaintiff can depose defendants to obtain them. But, plaintiff has failed to show any justification which would convince the Court to allow her to depose the attorney retained by defendants. Plaintiff has failed to show that defendants, in fact, are relying on advice of counsel as a defense to plaintiff's claim of bad faith failure to settle the insurance contract. Nor has plaintiff shown that this case comes under the crime-fraud exception or that the attorney is a fact witness. To the extent plaintiff cites law from outside this Circuit in order to obtain the documents, this Court is not at liberty to follow such cases to the extent they are contrary to the law in this Circuit.[4]

### II. Findings as to Particular Documents

On December 22, 1994, this Court held a telephonic conference concerning the 154 documents at issue. Prior to that defendants had voluntarily agreed to disclose documents and sent the Court and plaintiff a copy of the document listing which indicated which documents would be produced. The Court makes the following decisions as to the remaining documents. With respect to some documents, plaintiff waived her motion to compel, and as to others, defendants have voluntarily withdrawn their claim of privilege or protection and agreed to disclose them. The documents are listed in defendants' Index which is attached to pleading no. 21.

 As to document no. 5, the Court finds that the contents of the letter merely describes the service which counsel performed for defendant. However, this service was set out in much greater detail in the affidavit of Attorney Walter Brock used by defendants as one of the bases for withholding these documents. (Pleading 31) Thus, the protection has been waived. *See generally In re Martin Marietta Corp.,* 856 F.2d 619 (4th Cir.1988), *cert. denied,* 490 U.S. 1011, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989). Document no. 6 fails to state when it was created and, therefore, must be disclosed because the time may have been before litigation was anticipated. With respect to document nos. 35, 36 and 37, the Court finds that they involve matters within the ordinary course of business (insured's inquiry to her agent) as opposed to being a matter of work product or coming under any other protection. As to all of these documents, plaintiff's motion to compel is granted.

Plaintiff waived her motion to compel document nos. 7, 45, 53, and 61. As to these documents, *plaintiff's motion to compel is denied.*

 Next, a series of documents involve defendants' counsel's statement for legal services. These documents contain a brief description of the services, the amount of time spent, the date the charge was incurred, and the amount of the fee. Plaintiff does not wish to know the amount of the bill, but rather wants to examine the bill to find out the nature of the services in order to discover what advice the attorney was providing defendants and to learn other details about defendants' investigation of her claim. While attorney fee information is not ordinarily

---

**3.** Though conceptually similar, this test with respect to the opinion work product of an attorney would be, of course, much more rigorously applied than the one the court has constructed in Section I.B. for ordinary work product when confronted with bad faith denial of an insurance claim.

**4.** For example, in *Escalante v. Sentry Ins.,* 49 Wash.App. 375, 743 P.2d 832 (1987), *rev. denied,* 109 Wash.2d 1025 (1988), the court permitted opinion work product to be invaded in a bad faith case by a party merely making a stronger showing of necessity than for ordinary work product.

privileged, *In re Grand Jury Proceedings,* 33 F.3d 342, plaintiff does not seek such non-privileged information, but rather seeks to learn about matters which encompass defendants' work product, especially opinion work product. Therefore, while some of the information might be discoverable, plaintiff does not seek any of that and, therefore, plaintiff's motion to compel will be denied as to document nos. 110, 113, 125, 126, 132, 133, 139 and 151.

Next, a number of documents were generated after the lawsuit was filed on March 4, 1994. These include document nos. 56–58, 60, 140, 143–146, 148, 150, 152 and 152.5. These documents clearly constitute work product and an examination shows they were not prepared in the ordinary course of business. Therefore, plaintiff's motion to compel will be denied as to them.

With respect to document no. 169, this involves communications between the North Carolina State Bureau of Investigation and defendant with respect to a criminal investigation. The matter arose out of defendants' concern about potential litigation as a result of plaintiff's fire loss claim. Plaintiff has failed to show that the document is otherwise in the public domain as opposed to being a part of a confidential law investigation file to which privilege is attached under state law and also for being a part of defendants' work product. On these bases, the Court denies plaintiff's motion to compel this document.

The other documents, to wit: Document nos. 8 through 12, 25 through 27, 32, 39, 40, 43, 44, 46–48, 50, 52, 54, 71, 73, 77, 80, 85–92, 102–104, 107, 108, 110, 113–119, 124–126, 128, 129, 131–134, 136, 137, and 142 are all matters which the Court has ascertained were generated after October 17, 1991 but before March 4, 1994. Some of these documents were further generated subsequent to defendants' denial of plaintiff's claim on April 3, 1992. These documents are nos. 46–48, 50, 52, 54, 103, 113–119, 124–126, 129, 131–134, 136, 137, and 142. With respect to the docu-

ments generated after October 17, 1991 and before April 3, 1992, the Court determines, for the reasons stated above, that these documents were generated in anticipation of litigation and, therefore, are protected as work product. The rationale behind the decision is even stronger for the documents generated after plaintiff's claim was denied.

The Court has not made a separate determination with respect to which documents contain opinion work product and may also be subject to the attorney-client privilege. Until plaintiff demonstrates a substantial need to have ordinary work product, the Court sees no purpose for entering into these other arenas in order to delineate which documents are entitled to even greater or additional protection.

Plaintiff also argues that after her acquittal of the arson criminal charges in December 1992, she made another insurance claim or refiled her claim, which defendants rejected. She argues that it was not reasonable for defendants to have anticipated litigation until that time or that they should have reconsidered their prior decision. However, there is no evidence that defendants ever retreated from their original claim denial in April 1992. Plaintiff may not generate a new controversy concerning work product protection absent some showing that defendants changed their position with respect to anticipation of litigation. The fact that plaintiff was acquitted on criminal charges which require the higher standard of proof beyond a reasonable doubt would not necessarily suggest that the insurance companies would reconsider their position with respect to denying plaintiff's claim as a result of the acquittal. No other evidence has been presented to show any reason for defendants to have concluded that their original anticipation of litigation, which the Court has previously found reasonable, to have subsided. Consequently, plaintiff's request to compel production of these documents is denied.[5]

---

5. During the December 22, 1994 telephonic conference, the Court reviewed with plaintiff's counsel those matters which were attached to transmittal letters or faxed transmittal letters which were not public, but transmitted non-confidential documents. For example, defendants may well have faxed a copy of the complaint or sent a transmittal letter concerning the complaint and thereon made some notation or comment concerning this case. The Court's ruling only protects those matters which are, in fact, work product, i.e., the comments on the transmittal letters,

**IT IS THEREFORE ORDERED** that plaintiff's motion to compel defendants to produce further documents located in defendants' claims file be, and the same hereby is, denied, except as noted otherwise in the body of this Order.

and not the underlying public documents. However, as the Court went through the list, it made sure that plaintiff's counsel knew the nature of the public documents and had them or would be able to get them. Therefore, the Court will deny the motion to compel as to all the documents found under a particular item number without attempting the laborious task of separating documents.