**James BARTLETT, Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
Defendants.

**NO. IP01–0510 C–H/K.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

May 22, 2002.

Betsy K Greene, Nunn & Greene Law Office, Bloomington, IN, for Plaintiff.

Dennis F Cantrell, Bingham Summers Welsh & Spilman, Indianapolis, IN, for Defendants.

## ENTRY ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY

BAKER, United States Magistrate Judge.

When an insured brings suit against an insurance company alleging bad faith denial of a claim, the contents in the claims file are often a central issue in discovery. As is the case in this discovery dispute, the insurance company routinely asserts that the contents of its claims file are protected by the attorney-client privilege and work product doctrine.

Before the Court is Plaintiff's motion to compel discovery of contents in the claims file. For the reasons set forth below, Plaintiff's motion to compel is DENIED.

### I. Procedural History

In October 1996, Plaintiff James Bartlett sustained injuries in an automobile accident. At the time of the collision, Bartlett was insured by Defendant State Farm Automobile Insurance Company. His State Farm policy provided uninsured and underinsured motorist (UIM) coverage of $50,000 per person, $100,000 per accident, and $25,000 for medical bills. [Pl.'s Br., p. 2; Def.'s Br., p. 2]. Allstate, which insured the tortfeasor, paid Bartlett the Allstate policy limit of $25,000. In addition, State Farm paid Bart-

lett $25,000, the limit of his medical payments coverage. *Id.*

After its investigation, State Farm elected not to pay the UIM proceeds of $25,000 demanded by Bartlett, the limits provided by the policy. [Def.'s Br., pp. 2–3]. James Wilson, State Farm's team manager, concluded that Bartlett's claim was not worth more than the $50,000 he received from the Allstate policy ($25,000) and the medical payments paid by State Farm ($25,000). *Id.* at 3–4.

In response to State Farm's non-payment, Bartlett filed suit in state court seeking payment of $25,000, the limit of his UIM policy. *Id.* at 4. Bartlett's claim proceeded to trial in February 2001, and the jury returned a verdict of $99,971.34. [Pl. Br., p. 3]. State Farm then paid the $25,000 for the UIM claim to Bartlett.

A month later, Bartlett filed the present suit alleging, among other causes of action, that State Farm breached its duty of good faith and fair dealing by failing to tender the UIM policy, tortious breach of contract, and unfair insurance settlement practices in violation of Indiana Code 27–4–1–4.5. [Pl.'s Br., pp. 4–5]. In *Erie Ins. Co. v. Hickman by Smith,* 622 N.E.2d 515 (Ind.1993), the Indiana Supreme Court recognized a claim for tortious breach of an insurer's duty to deal with its insureds in good faith. In that case, the court stated that the duty of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes, among other things, the obligation to refrain from: (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of a claim. *Id.* at 519. *See also Gooch v. State Farm Mut. Auto. Ins. Co.,* 712 N.E.2d 38, 40 (Ind.Ct. App.1999). State Farm's motion for summary judgment is pending before the Court on these claims. [Docket # 14].

Bartlett served discovery requests, and State Farm responded in part by objecting on privilege grounds and providing a privilege log indicating responsive documents

withheld. [Ex. C]. For instance, State Farm claims attorney-client privilege to correspondence between it and Sharpnack Bigley, the attorney who represented them in Bartlett's UIM lawsuit. In addition, State Farm claims the work-product doctrine protects from production: (1) an interrogatory summary drafted by Bigley and draft responses to Bartlett's interrogatories; (2) medical and employment chronologies related to Bartlett; (3) a recap of Bartlett's medical expenses; and (4) State Farm's request to obtain utilization review of Bartlett's medical treatment. [Def.'s Br., pp. 1–2]. Bartlett contends that discovering the evaluation process and defense process is critical to prove State Farm's state of mind, and thus, that it engaged in unlawful insurance practices. [Pl.'s Br., pp. 8–9].

## II. Discussion

### A. Attorney–Client Privilege

■ As a preliminary matter, federal courts presiding over a diversity action such as this look to state law, not federal law, in determining the existence and scope of the attorney-client privilege. *Urban Outfitters, Inc. v. DPIC Companies, Inc.,* 203 F.R.D. 376, 378 (N.D.Ill.2001), *citing* Federal Rule of Evidence 501; *Abbott Laboratories v. Alpha Therapeutic Corp.,* 200 F.R.D. 401, 405 (N.D.Ill.2001) (same).

■ The attorney-client privilege is "one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States,* 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998). It protects against judicially compelled disclosure of confidential information. *Lahr v. State,* 731 N.E.2d 479, 482 (Ind.Ct.App.2000), *citing Canfield v. Sandock,* 563 N.E.2d 526, 529 (Ind.1990). The source of the attorney-client privilege in Indiana is found in Indiana Code § 34–46–3–1 which provides in pertinent part:

> Except as otherwise provided by statute, the following persons shall not be required to testify regarding the following communications: (1) Attorneys, as to confidential communications made to them in the course of their professional business, and as to advice given in such cases.

*In re Commitment of J.B.,* 766 N.E.2d 795, 797 (Ind.Ct.App.2002), *citing* I.C. § 34–46–3–1. The burden of proof as to the applicability of the privilege is on the party who asserts it. *Owens v. Best Beers of Bloomington, Inc.,* 648 N.E.2d 699, 702 (Ind.Ct.App.1995).

■ The privilege is intended to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). In addition, the privilege allows both the attorney and the client to give complete and confidential information in candor so that both may be fully advised regarding the attorney's services to the client; the client likewise is assured that confidences are not violated. *Lahr,* 731 N.E.2d at 482.

■ However, the privilege "is not an absolute, eternal shield; a client who does not safeguard the confidentiality of communications that would otherwise be protected waives the privilege and subjects the communications to compelled disclosure." *R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.,* 2001 WL 1571447, *2 (N.D.Ill. 2001), *citing United States v. White,* 950 F.2d 426, 430 (7th Cir.1991).

■ Utilizing the attorney-client privilege, State Farm seeks to shield its correspondence with Bigley in preparation for Bartlett's UIM lawsuit. The issue presented here was addressed in *Hartford Financial Services Group, Inc. v. Lake County Park and Recreation Bd.,* 717 N.E.2d 1232, 1235 (Ind.Ct.App.1999). In that case, plaintiff, a municipal entity who operated a water park, filed suit against its insurance company, Hartford, claiming it had acted in bad faith in investigating an insurance claim for property damage to a pool. Hartford originally determined that the loss was covered but retreated from its position when plaintiff proposed a cost of $1.5 million for replacement of the pool. The trial court compelled discovery, ordering production of "all of [Hartford's] claims files relating to the claim which is the

subject of this cause of action, including but not limited to, the claims files of the home office, regional office, local claims office, private investigator's file, and independent insurance adjustor's files, including the file jacket, which were generated before the complaint was filed." *Id.* at 1234. The documents included "correspondence between Hartford and its outside counsel as well as internal communications regarding the advice or opinions of counsel with respect to the loss." *Id.* Hartford was granted leave to file an interlocutory appeal. On an issue of first impression, the Indiana Court of Appeals reversed. The court observed:

> The role of Hartford's counsel was not one of mere negotiator; nor was the attorney retained to act in the capacity of an agent other than an attorney such as a type of "outside claims adjuster" or to give simple business advice. Simply put, Hartford retained counsel to investigate Lake County's claim, render legal advice and make a coverage determination under the policy. Here, Hartford is not seeking to defend [plaintiff] against a third party. Rather, the underlying claim here, which remains unresolved, is whether [plaintiff] is covered under its policy with Hartford for the damage it allegedly sustained. The communication between Hartford and its attorney was not on behalf of [plaintiff], but was rather on behalf of Hartford ... To permit [plaintiff] access to the documents simply because it asserted a bad faith claim against Hartford would ignore the basic premise of protecting the attorney-client privilege.

*Id.* at 1236–38. The court also noted that, in any event, plaintiff could obtain the information through other non-privileged sources. "[T]o establish a claim for bad faith, the facts, rather than the legal advice or opinions pertaining to the insurer's decisions, can be developed through depositions and other discovery of non-privileged information." *Id.* at 1237.

The principles discussed in *Hartford* apply here. Attorney Bigley did not serve State Farm in the capacity as an adjustor or an agent providing routine business advice. Rather, Bigley served State Farm as its trial counsel in Bartlett's first case. In litigating Bartlett's first case, State Farm believed that its communications with Bigley could be open and candid and that it would be protected by the attorney-client privilege. In addition, despite his assertions, Bartlett can obtain much of this information through lesser-intrusive means. For instance, Bartlett deposed Wilson, the person responsible for denying his claim. Presumably, a follow-up deposition will occur in which Bartlett can inquire as to how State Farm handled his UIM claim. Finally, the fact that State Farm denies it acted in bad faith does not invoke the so-called "put-in-issue" exception. *See, e.g., Chamberlain Group v. Interlogix, Inc.,* 2002 WL 467153, *3 (N.D.Ill. Mar.27, 2002), *quoting Harter v. University of Indianapolis,* 5 F.Supp.2d 657, 665 (S.D.Ind.1998) ("when a client files a lawsuit in which his or her state of mind ... may be relevant, the client does not implicitly waive the attorney-client privilege ... unless the client relies specifically on advice of counsel to support a claim or defense").

Accordingly, with regard to documents Bates stamped Nos. 193–202, 204–210, 212, 219–229, 239–242, 244–246, 249–255, and 258–281, Plaintiff's motion to compel is DENIED.

## B. Work–Product Doctrine

 The work product doctrine, announced in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), protects otherwise discoverable documents and was subsequently codified as Rule 26(b)(3) of the Federal Rules of Civil Procedure. Rule 26(b)(3) provides:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of the rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by oth-

er means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation. *E.E.O.C. v. International Profit Associates, Inc.*, 206 F.R.D. 215, 220 (N.D.Ill. Mar.27, 2002), *quoting* Fed.R.Civ.P. 26(b)(3); *Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 477–78 (N.D.Ill.2002). The threshold determination is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Mold–Masters Ltd. v. Husky Injection Molding Systems Ltd.*, 2001 WL 1558303, *2 (N.D.Ill.2001), *quoting* 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2024, at 343 (2d ed.1994). The documents must have been created in response to "a substantial and significant threat of litigation, which can be shown by objective facts establishing an identifiable resolve to litigate." *SmithKline Beecham Corp. v. Pentech Pharmaceuticals, Inc.*, 2001 WL 1397876, *2 (N.D.Ill.2001). The party asserting the work-product doctrine must establish all of its elements on a document-by-document basis. *Mold–Masters*, 2001 WL 1558303, at *2.

The work product doctrine is distinct from, and broader than, the attorney-client privilege. *Blanchard v. EdgeMark Financial Corp.*, 192 F.R.D. 233, 237 (N.D.Ill. 2000). It exists because "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman*, 329 U.S. at 510, 67 S.Ct. 385. If there was no work product exception, "attorney's efforts during pretrial discovery could disrupt the orderly development and presentation of his case," and may have a "demoralizing effect on the legal profession." *Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 478 (internal citations and quotations omitted).

The work product doctrine can be rebutted. To overcome its protection, "the party seeking discovery must show a sub-stantial need for the materials and an inability to obtain the substantial equivalent of the information without undue hardship." *International Profit Associates*, 206 F.R.D. at 221, *citing Caremark, Inc. v. Affiliated Computer Services, Inc.*, 195 F.R.D. 610, 614 (N.D.Ill.2000). This burden is a difficult one and is satisfied only in "rare situations, such as those involving witness unavailability." *Trustmark Insurance Co. v. General & Cologne Life Re of America*, 2000 WL 1898518, *3 (N.D.Ill.2000).

State Farm's claims of work product are comprised of: (1) an interrogatory summary and a draft response to Bartlett's interrogatories drafted by Bigley; (2) Bartlett's medical and employment chronologies; (3) a recap of Bartlett's medical expenses; and (4) State Farm's request to obtain utilization review/IME. [Ex. C].

Courts that have addressed the applicability of the work product doctrine and the production of contents in a claims file in a bad faith insurance claim are split as to whether these documents should be produced. For instance, in *Prisco Serena Sturm Architects, Ltd. v. Liberty Mut. Ins. Co.*, 1996 WL 89225, *1 (N.D.Ill.1996), the court compelled production of the claims file noting that "[t]he claims file is a unique, contemporaneously prepared history of the company's handling of the claim; in an action such as this the need for the information in the file is not only substantial, but overwhelming. ... It follows that where allegations of bad faith exist against an insurance company, the plaintiff insured is entitled to know the substance of the investigation, the information available and used to make a decision, and the evaluations and advice relied upon for the decision." *Id.* at *1 (internal quotations omitted). As to the insured's substantial need, the court concluded that the "insurance claims file is likely to be the sole or primary source." *Id.*

Similarly, in *Transport Insurance Company, Inc. v. Post Express Company, Inc.*, 1996 WL 32877, *3 (N.D.Ill.1996), in finding a substantial need, the court also compelled production of the file because the "claims file, which Post Express seeks, is the only record of how Transport handled the claim and, therefore, the only evidence on whether Transport acted reasonably or in good faith

in failing to settle the claim against Post Express in the [insured's] lawsuit." *Id.* at *3. Other courts have concurred with this result. *See, e.g., Silva v. Fire Ins. Exchange,* 112 F.R.D. 699 (D.Mont.1986); *Brown v. Superior Court In and For Maricopa County,* 137 Ariz. 327, 670 P.2d 725, 734 (1983); *Pete Rinaldi's Fast Foods, Inc. v. Great American Ins. Companies,* 123 F.R.D. 198, 203 (M.D.N.C.1988); *Holmgren v. State Farm Mut. Auto. Ins. Co.,* 976 F.2d 573, 577 (9th Cir.1992).

Other courts have concluded that the claims file is protected by the work product doctrine. For instance, in *Kujawa v. Manhattan Nat. Life Ins. Co.,* 541 So.2d 1168 (Fla.1989), the Florida Supreme Court addressed this issue by focusing on the relationship between the insured and the insurer. The *Kujawa* court held that "an adversarial, not a fiduciary, relationship existed between the parties and that the legislature in creating the bad faith cause of action did not evince an intent to abolish the attorney-client privilege and work product immunity." *Id.* Similarly, in *Ring v. Commercial Union Ins. Co.,* 159 F.R.D. 653 (M.D.N.C.1995), the court followed suit, noting that "[w]hile arguably it may be more difficult to prove a claim of bad faith failure to settle without examining an insurance company's claims file, that does not mean it is impossible." *Id.* at 657. The court also noted Rule 11 requires the plaintiff to have a reasonable basis in fact to bring the claim. *Id.* Finally, the plaintiff could "thoroughly depose and examine the defendants' adjuster to find out all of his actions and decisions leading to the denial of the claim." *Id.*

This Court finds the latter approach more persuasive. State Farm presents sufficient evidence that the documents in question were prepared in anticipation of litigation for Bart-

lett's first case tried in state court and not in the ordinary course of business.[1] *See, e.g., B.F.G. of Illinois, Inc. v. Ameritech Corp.,* 2001 WL 1414468, *3 (N.D.Ill.2001) ("Determining what is 'prepared in anticipation of litigation' has both a temporal and causation element … [W]ork product is defined as those materials produced because of the anticipation of litigation."); *E.E.O.C. v. International Profit Associates, Inc.,* 206 F.R.D. 215 (N.D.Ill.2002) (to qualify as work product, the material must come into existence because of the prospect of litigation or because some articulable claim is likely to lead to litigation); *see also* 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2024, at 343 (2d ed. 1994) ("[T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.").

Notwithstanding the draft responses to Bartlett's interrogatories,[2] the Court doubts that discovery of chronologies of Bartlett's medical and employment history, information relating to his medical expenses, and State Farm's request to obtain utilization review/IME bears on State Farm's state of mind in handling his claim. Further, Bartlett fails to show that there is a substantial need for the discovery of this information. Bartlett has taken the partial deposition of Wilson, the State Farm representative responsible for denying his claim. Bartlett presumably will reconvene the deposition to address issues raised during the handling of his UIM claim. Also, with the exception of the draft responses and interrogatory summaries compiled by counsel, Bartlett can readily obtain this information himself. Bartlett is in the best position to reproduce

---

1. The situation in *Prisco Serena Sturm Architects, Ltd. v. Liberty Mut. Ins. Co.,* 1996 WL 89225, *1 (N.D.Ill.1996) is easily distinguished. There, the court found that the documents in question were prepared by the insurance company's representatives in the ordinary course of business several months prior to the advent of any litigation.

2. These documents are classic opinion work product because they contain the attorney's mental impressions and legal strategies. In addition, these documents are likely unreliable sources to determine whether State Farm acted in bad faith

in denying Bartlett's claim. *See Long v. Anderson University,* 204 F.R.D. 129, 135 (S.D.Ind.2001) (court concluded that client's draft responses to plaintiff's complaint protected from discovery); *Eagle Compressors, Inc. v. HEC Liquidating Corp.,* 206 F.R.D. 474, 478 (N.D.Ill. 2002) ("opinion work product is protected even when undue hardship exists"); *IBJ Whitehall Bank & Trust Co. v. Cory & Associates, Inc.,* 1999 WL 617842, *1 (N.D.Ill.1999) (holding that only documents "primarily concerned with legal assistance" are cloaked with immunity).

**630**

information pertaining to his medical and employment history and calculate his medical expenses. In addition, Bartlett can subpoena medical providers for information relating any IME performed to determine his medical condition. These lesser-intrusive means of obtaining this information exemplify Bartlett's lack of a substantial need. *See Caremark, Inc. v. Affiliated Computer Services, Inc.*, 195 F.R.D. 610, 614 (N.D.Ill.2000) (party objecting to non-production can still obtain privileged documents if he demonstrates a "substantial need" for the documents and that they would suffer "undue hardship" if they were required to obtain the information in another manner); *SmithKline Beecham Corp. v. Pentech Pharmaceuticals, Inc.*, 2001 WL 1397876, *2 (N.D.Ill.2001) (same).

Accordingly, with regard to documents Bates stamped Nos. 372–78, 513–14, 563–653, and 654–64, Plaintiff's motion to compel is DENIED.

### III. Conclusion

For the reasons set forth, Plaintiff's motion to compel is DENIED.

So ordered.