Chester CARVER, Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, Defendant.

Civ. A. No. CV 581–66.

United States District Court, S. D. Georgia, Waycross Division.

April 7, 1982.

Curtis Farrar, Farrar & Farrar, P. C., Douglas, Ga., for plaintiff.

Robert C. Semler, Atlanta, Ga., for defendant.

## ORDER

ALAIMO, Chief Judge.

This is an action to recover the proceeds under an insurance policy for a fire loss sustained by the plaintiff to his home and personal property and, in addition, to recover statutory bad faith penalties for the defendant's refusal to pay for the loss. The case is now before the Court on the plaintiff's motion, pursuant to Federal Rule of Civil Procedure 37(a), to compel the production of certain documents prepared by the defendant in investigating the claim. Specifically, the plaintiff seeks production of copies of:

a) All "diary sheets" prepared by Tom Bradford, John Palmer, or any other employee, agent or servant of defendant, or other person or agency on behalf of defendant, regarding the fire loss which is the subject of this action.

b) All reports, known as "Result Forms," prepared by John Palmer or any other person or agency acting on behalf of defendant, and forwarded to defendant's home office, regarding the fire loss which is the subject of this action.

Plaintiff's Second Request for Production, Dec. 23, 1981.

The Court must determine whether this material constitutes work-product immune from discovery under Federal Rule of Civil Procedure 26(b)(3). For the reasons detailed below, the Court holds that the "diary sheets" prepared by Tom Bradford in his initial investigation of the fire loss are discoverable, because they do not meet Rule 26(b)(3)'s prerequisite that the material be "prepared in anticipation of litigation." The Court, however, further holds that the "diary sheets" and "result forms" filed by John Palmer or anyone associated with his investigation or subsequent investigations are not discoverable, because these documents were "prepared in anticipation of litigation," and the plaintiff has failed to prove that he would suffer undue hardship in obtaining the equivalent of the facts noted in these documents. The motion is, therefore, GRANTED IN PART and DENIED IN PART.

## DISCUSSION

Federal Rule of Civil Procedure 26(b)(3) was adopted in 1970 to codify the holding in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). 8 Wright & Miller, *Federal Practice & Procedure: Civil* § 2023 (1970). In *Hickman*, the Supreme Court created a limited immunity from discovery for the written statements, private memoranda, and personal recollections prepared by an adverse party's counsel in anticipation of litigation. The decision was based in large measure on the need to protect the thought processes of lawyers. In the words of Justice Jackson, "[d]iscovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary." *Id.* at 516, 67 S.Ct. at 396 (Jackson, J., concurring). Accordingly, "relevant and non-privileged *facts* . . . hidden in an attorney's file" were held producible if essential to the preparation of the discovering party's case. *Id.* at 511, 67 S.Ct. at 394 (emphasis added).

The *Hickman* decision was the seminal case in the development of what is now termed the work-product doctrine. Rule 26(b)(3) preserves the essential portions of the doctrine as announced in *Hickman* and resolves conflicts in the post-*Hickman* cases. It also notably expands the doctrine by extending discovery protection to the work-product of a party or his agents and representatives, as well as that party's attorney. *See Westhemeco Ltd. v. New Hampshire Ins. Co.*, 82 F.R.D. 702, 708 (S.D.N.Y.1979); *United States v. Chatham City Corp.*, 72 F.R.D. 640, 642 (S.D.Ga.1976). In pertinent part, Rule 26(b)(3) provides:

". . . a party may obtain discovery of documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In order-

ing discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning that litigation."

In the case at bar, the defendant initially objected to producing the documents at issue on the ground that they contain the mental impressions of its investigators, and thus are protected by Rule 26(b)(3). The plaintiff claims that Rule 26(b)(3) does not create an inviolate immunity for written mental impressions but allows discovery upon demonstration of substantial need and an inability to obtain the equivalent information by other means. Plaintiff further contends that substantial need for such impressions is shown by their value in proving the claim of bad faith in Allstate's refusal to pay the loss.

The plaintiff's argument, if accepted, would create a uniform test to determine work-product immunity whether the work-product contained the author's mental impressions or merely a compendium of his factual findings. Yet this uniformity would be inconsistent with the holding in *Hickman* and the plain language of Rule 26(b)(3). The rule is clear that mental impressions "shall" be protected, even if a showing of substantial need and hardship is made with respect to the other portions of a litigation document; and many courts have interpreted this language to create an absolute immunity to the discovery of mental impressions detailed in litigation documents, *e.g., Duplan Corp. v. Moulinage et Retorderie de Chavonoz*, 509 F.2d 730 (4th Cir. 1974), *cert. denied*, 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975), including this Court. *United States v. Chatham City Corp., supra*, 72 F.R.D. at 643 n.3 ("the impressions, opinions and conclusions of the attorneys or representatives of a party are not disclosable . . . [and] [t]his protection is absolute.")

Yet in focusing on the question of whether documents containing mental impressions are discoverable, the parties have

begged the more dispositive question in this dispute. Rule 26(b)(3) immunity protection applies only to "documents and tangible things ... *prepared in anticipation of litigation.*" Fed.R.Civ.P. 26(b)(3) (emphasis added); *see* 8 Wright & Miller, *Federal Practice & Procedure: Civil* § 2024 (1970). Both parties appear to assume that the discovery documents in dispute here were "prepared in anticipation of litigation." But the courts have noted that not all documents prepared by an insurance company in investigating a claim meet this prerequisite. The general rule for determining whether a document can be said to have been "prepared in anticipation of litigation" is whether "the document can fairly be said to have been prepared or obtained because of the prospect of litigation, ... [and not] in the regular course of business." 8 Wright & Miller, *Federal Practice & Procedure: Civil* § 2024 (1970). Paradoxically, insurance company investigating documents straddle both ends of this definition, because it is the ordinary course of business for an insurance company to investigate a claim with an eye toward litigation. Yet, a hard and fast rule in either direction would be contrary to various goals of modern discovery practice. To foreclose from discovery all insurance company investigatory reports would unnecessarily hike the expense in proceeding against insurance companies, in violation of Rule 1 of the civil rules and, once again, may render the factfinding process a cat and mouse game. *See Thomas Organ Co. v. Jadranska Slobodna Plovidba*, 54 F.R.D. 367, 373 (N.D.Ill.1972). Yet, to open for discovery these internal documents may inhibit a claims adjuster from reporting all his thoughts and ideas regarding a claim, because no protection against discovery is afforded documents containing mental impressions not prepared in anticipation of litigation. *Miles v. Bell Helicopter Co.*, 385 F.Supp. 1029, 1033 n.2 (N.D.Ga.1974). Investigation reports might then be less reliable in evaluating and disposing of claims and an insurance company's claims evaluation process, as a whole, might be disrupted. In addition, full discovery may allow a plaintiff proceeding against an insurance company to co-opt "the wits" of his adversary, in contravention of the *Hickman* doctrine.

Courts, however, have found a solution to this dilemma in the very means by which an insurance company conducts its business. In the early stages of claims investigation, management is primarily concerned not with the contingency of litigation, but with "deciding whether to resist the claim, to reimburse the insured and seek subrogation of the insured's claim against the third party, or to reimburse the insured and forget about the claim thereafter." *Thomas Organ Co. v. Jadranska Slobodna Plovidba, supra*, 54 F.R.D. at 373. At some point, however, an insurance company's activity shifts from mere claims evaluation to a strong anticipation of litigation. *See Westhemeco Ltd. v. New Hampshire Ins. Co., supra*, 82 F.R.D. at 708. This is the point where the probability of litigating the claim is substantial and imminent. *See APL Corp. v. Aetna Cas. & Sur. Co.*, 91 F.R.D. 10, 21 (D.Md.1980); *Miles v. Bell Helicopter Co., supra*, 385 F.Supp. at 1033. The point is not fixed, it varies depending on the nature of the claim, and the type of investigation conducted. *See Westhemeco Ltd. v. New Hampshire Ins. Co., supra*, 82 F.R.D. at 708. The decision whether insurance company investigatory documents were "prepared in anticipation of litigation" turns, therefore, on the facts of each case.

In the instant case, the Court has before it the depositions of Allstate claims adjusters Tom Bradford and John Palmer. These men headed Allstate's investigatory operations regarding the plaintiff's claim until the time this suit was filed, and the depositions enable the Court to determine which investigatory reports were "prepared in anticipation of litigation."

Bradford's deposition reveals that he is an Allstate claims representative working in Valdosta, Georgia, and responsible for investigating claims for property loss in the Douglas, Georgia, area; Douglas being the location of the plaintiff's property at the time of the loss. He was contacted by

Allstate's Macon office to conduct an investigation of the circumstances surrounding the fire and the value of the loss, and he did so from July 1, 1981, through August 26, 1981. In the course of his investigation, Bradford would prepare daily reports detailing his investigatory work on the case during that day. The reports are standard Allstate policy and are referred to as "diary sheets." Deposition of T. Bradford, Dec. 18, 1981, pp. 3–4. On August 26, 1981, the case investigation was assigned to senior claims representative John Palmer of Allstate's Macon office. Palmer was assigned to continue the investigation for two reasons—the claimed monetary loss was substantial, and Allstate management had indications that the fire was the result of arson committed by or under the direction of the plaintiff. Deposition of J. Palmer, Dec. 18, 1981, p. 5. The indications came from a report by Bradford describing what he felt were suspicious circumstances concerning the cause of the fire, and a similar report from an independent investigator, called in by Allstate, Equifax Services. Deposition of J. Palmer, Dec. 18, 1981, p. 69. Palmer continued the investigation until November 6, 1981, when he turned the file over to an Allstate defense attorney. Allstate continued to investigate the claim through at least the date of Palmer's deposition. Deposition of J. Palmer, Dec. 18, 1981, p. 43. During the course of his investigation, Palmer would make "diary sheets" and also prepare monthly investigatory reports which were forwarded to a claims attorney in Allstate's home office in Wheeling, Illinois. These monthly reports are known to Allstate employees as "result forms," and, along with the "diary sheets," are the objects of the discovery motion. Deposition of J. Palmer, Dec. 18, 1981, pp. 8–9, 23–25.

These facts indicate to the Court that when Allstate's investigation of the plaintiff's fire loss was assigned to John Palmer, he conducted the investigation in anticipation of litigation, and all documents emanating therefrom were "prepared in anticipation of litigation" as prerequired by Rule 26(b)(3). First, claims for fire loss, unlike other types of property loss, can more easily be cloaked in fraudulent or criminal conduct, and engender more wariness from insurance companies at the time of filing. Second, in the instant case, prior to Palmer's involvement, initial wariness was fortified by detailed suspicions from both in-house and independent investigators. Third, Palmer was assigned to continue the investigation precisely because of the suspicious conduct that Allstate believed it had uncovered. The Court thinks that at this point in the investigation, the likelihood that litigation would ensue was substantial, and Palmer conducted his investigation with the knowledge of this probability and the collateral likelihood that his reports would be used in the eventual litigation. Indeed, the monthly summary reports prepared by Palmer were forwarded directly to Allstate's claims attorneys, indicating at the very least, a close monitoring of the investigation by corporate counsel. *See generally Thomas Organ Co. v. Jadranska Slobodna Plovidba, supra,* 54 F.R.D. at 372 (documents prepared by party agents in conjunction with attorneys are within the scope of Rule 26(b)(3)). These documents, therefore, fall within the purview of Rule 26(b)(3), and the Court must make the further determination whether that rule's limitations on immunity apply to these documents, or whether the materials are entitled to complete immunity from discovery. As for any "diary sheets" or "result forms" prepared by Tom Bradford or other Allstate employees during the course of Bradford's investigation, the prospect of litigation was still inchoate at the time such documents were prepared, thus they cannot be said to have been "prepared in anticipation of litigation" and they are discoverable by the plaintiff.

It is clear from the earlier discussion that the thoughts and mental impressions contained in the investigatory reports during the Palmer investigation and any subsequent investigation are immune from discovery. The depositions indicate, however, that the "diary sheets" and "result forms" also contain factual data elicited during interviews with witnesses to the fire and people familiar with the circumstances sur-

rounding it or the plaintiff's economic condition at the time of the blaze. Such facts are protected from discovery only if the discovering party fails to show a substantial need for the documents and undue hardship in obtaining their equivalent.[1] Fed.R.Civ.P. 26(b)(3). The Court thinks that the facts contained in the investigatory documents can be elicited by deposing Palmer and the witnesses he had interviewed, as well as any subsequent investigators of the claim and interviewed witnesses. Rule 26(b)(3)'s work-product protection "furnishes no shield against discovery," by interrogatory and deposition, of the facts that an adverse party's representative has amassed and accumulated in documents prepared for litigation. 8 Wright & Miller, *Federal Practice & Procedure: Civil* § 2023 (1970). Moreover, unless the circumstances of the case indicate otherwise, the mere added expense of deposition discovery does not amount to undue hardship as required by the rule. *See United States v. Chatham City Corp., supra,* 72 F.R.D. at 644; *Miles v. Bell Helicopter Co., supra,* 385 F.Supp. at 1032; 8 Wright & Miller, *Federal Practice & Procedure: Civil* § 2025 (1970). The Court believes that the added expense incurred in deposing the principals involved in the Palmer and any subsequent investigation does not constitute undue hardship. The Court, therefore, holds that the "diary sheets" and "report forms" of the Palmer investigation or any other subsequent investigation conducted by Allstate agents or employees are immune from discovery by virtue of Rule 26(b)(3).

CONCLUSION

In conclusion, the Court orders that copies of all "diary sheets" and "result forms" prepared by any employee, agent, or servant of the defendant or other person on behalf of the defendant prior to the investigation of the plaintiff's claim by John Palmer must be produced to the plaintiff. But all such materials prepared by Allstate employees, agents, or servants during or following the Palmer investigation are im-

mune from discovery by virtue of Rule 26(b)(3).

---

1. Courts have noted that when work product contains both discoverable facts and mental processes the court may make an *in camera* investigation prior to production and extricate the protected parts. *See United States v. Chatham City Corp., supra,* 72 F.R.D. at 642 n.1.