Raymond C. MOORE, Plaintiff,

v.

TRI–CITY HOSPITAL AUTHORITY, d/b/a South Fulton Hospital; Clyde E. Maxwell, Jr., in his individual capacity and in his official capacity as Administrator of South Fulton Hospital; C.C. Martin; Leroy Walls; William E. Strickland; C.L. Ratterree; Lewis Hasty; W.A. Huff; Cliff McGaughey, Jr.; M. Floyd Morris; Kenneth E. Stearns, in their individual capacities and in their official capacities as Trustees of the Tri–City Hospital Authority; and Harold R. Bott, Defendants.

No. 1:86–CV–2550–RHH.

United States District Court, N.D. Georgia, Atlanta Division.

Jan. 28, 1988.

---

James L. Ford, Ford & Haley, George M. Weaver, Sibley & Weaver, Atlanta, Ga., for plaintiff.

Victor Alwin Cavanaugh, Swift Currie McGhee & Hiers Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

This is a section 1983 claim for violation of plaintiff's due process rights under the Fourteenth Amendment and free speech rights under the First Amendment arising out of plaintiff's alleged termination from his position as Chaplain at South Fulton Hospital. Currently before the court is Defendants' Motion to Compel Discovery Responses.

**FACTS**

Plaintiff filed this action on November 26, 1986. On August 29, 1987, defendants served their First Interrogatories and Request For Production of Documents on the plaintiff. There is no dispute that these documents were served on plaintiff's counsel in accordance with the Federal Rules of Civil Procedure. On or about October 5, 1987, plaintiff served his answers on defendants' attorneys of record. Subsequently, on or about October 27, 1987, and on or about November 12, 1987, plaintiff supplemented his answers and responses.

The requests for production at issue in defendants' current motion to compel include:

> 1. All documents, written material, printed materials, graphic materials, recorded information or data compilations relied upon or consulted in the preparation of your responses to defendants' first interrogatories.

2. Request for production which is all documents, written materials, printed materials, graphic materials, recorded materials or data compilations described, identified, mentioned or referred to in any manner in any of your responses to defendants' first interrogatories.

3. All documents, written materials, printed materials, graphic materials, recorded information or data compilations which mention, refer or relate in any manner to your employment as Hospital Staff Chaplain at South Fulton Hospital from the period January 1, 1985, through the present.

4. Any documents, including diaries, which describe your actions, conversations, meetings, speculations, thoughts or feelings concerning any or all of the defendants, the South Fulton Hospital Chaplain's Association, South Fulton Hospital Auxiliary or members of the Chaplain's Association or Hospital Auxiliary between January 1, 1985 through the present.

Defendants' First Interrogatories and Request for Production of Documents.

Plaintiff has produced all materials covered by these four requests for production except for certain entries in his diaries. Specifically, plaintiff has objected to the production of those entries for July 14, 1986 through August 29, 1987 which are pertinent under defendants' requests. (Moore Affidavit ¶ 2). As grounds for plaintiff's objections plaintiff contends that the relevant daily diary entries from July 14, 1986, through September 9, 1986 are protected by the work product privilege and the entries from September 10, 1986, through August 29, 1987 are protected by both the work product privilege and the attorney/client privilege.

Plaintiff, in his affidavit, testified that on July 14, 1986, he "began thinking about persons who could serve as witnesses, attorneys who could assist [him], and legal arguments that might be made on [his] behalf" and that his diary reflects those activities. Moore Affidavit ¶ 6. Plaintiff testified that he first spoke to his daughter and son-in-law who are both attorneys and

then retained counsel beginning in September 1986. *Id.* plaintiff testified that in August 1986, he obtained the name of Susan Cahoon, an Atlanta attorney, as a person who might represent him. *Id.* Plaintiff testified that he met with Ms. Cahoon and discussed his case with her. *Id.* Plaintiff testified that she evaluated his case and on September 19, 1986 plaintiff decided to sue. *Id.*

Plaintiff testified that Ms. Cahoon could not represent him. *Id.* According to plaintiff's affidavit, she did refer plaintiff to James L. Ford, and thereafter plaintiff retained Mr. Ford on October 10, 1986. *Id.* Ford supervised the filing of this suit on November 26, 1986. *Id.* Plaintiff subsequently relieved Mr. Ford and retained his present counsel. *Id.*

Plaintiff testified that, "[e]ven before I obtained counsel I was mentally preparing for litigation and organizing materials and making notes toward that end. All entries in my diaries on or after July 14, 1986 which refer to my employment or mention defendants or any of the organizations or events involved in this case were made by me in an effort to prepare for litigation." *Id,* at ¶ 7.

## DISCUSSION

### *Attorney–Client Privilege*

Plaintiff contends that under Fed. R.Civ.P. 26(b)(1), which embodies the common law of attorney-client privilege as interpreted by the courts of the United States, applies in this case. The privilege extends to communications from the attorney to the client, as well as the reverse. *Pitney–Bowes, Inc. v. Mestue,* 86 F.R.D. 444 (S.D.Fla.1980) *See generally Eglin Federal Credit Union v. Cantor, Etc.,* 91 F.R.D. 414, 417–20 (N.D.Ga.1981) (Hall, J.) Although the privilege does not apply merely because of an attorney-client relationship, a privilege otherwise assertable applies during the time the holder of the privilege is or sought to become a client. *U.S. v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358 (D.C.Mass.1950) *cited in Garner v. Wolfinbarger,* 430 F.2d 1093, 1099 (5th Cir.1970). The privilege is limited to communications intended to be confiden-

tial or those that might tend to reveal a confidential communication. *See In re Ampicillin Antitrust Litigation,* 81 F.R. D. 377 (D.D.C.1978). Defendants in this case, concede that any diary entry which summaries a conversation between plaintiff and his attorneys falls within the privilege. Defendants' Brief in Support at 7.

*Work Product Privilege*

The United States Supreme Court first set forth the work-product privilege in *Hickman v. Taylor,* 329 U.S. 495, 511–12, 67 S.Ct. 385, 393–94, 91 L.Ed. 451 (1947). It is a qualified privilege of immunity from discovery during litigation. *In re Grand Jury Proceedings,* 73 F.R.D. 647, 653 (M.D. Fla.1977). The *Hickman* decision provides the underpinnings for the present doctrine. Rule 26(b)(3), Fed.R.Civ.P. preserves the essential portions of the doctrine as announced in *Hickman,* but also notably expands the doctrine by extending discovery protection to the workproduct of a *party* as well as that party's attorneys. *Carver v. Allstate Ins. Co.,* 94 F.R.D. 131 (S.D.Ga. 1982).

Under Rule 26(b)(3), the protection applies to (1) documents and tangible things; (2) prepared in anticipation of litigation or for trial; and (3) that were prepared by or for another party or by or for that other party's representative. The only factor in dispute here is whether the pertinent entries in plaintiff's diaries were "prepared in anticipation of litigation or for trial." In this court, with respect to documents prepared before litigation is formally commenced, "[t]he probability that some particular litigation will occur must be substantial before a document may be deemed to

be 'in anticipation of litigation' ... Therefore, the mere fact that a particular action ... has a likelihood of bringing about litigation in the future is not a sufficient showing. The probability must be substantial and the commencement of litigation must be imminent. Phrased another way, *some particular litigation must be contemplated at the time the document is prepared." Miles v. Bell Helicopter,* 385 F.Supp. 1029, 1033 (N.D.Ga.1974) (Edenfield, J.) (quoting *Duplan Corp. v. Deering Milliken, Inc.,* 61 F.R.D. 127, 130 (D.S.C. 1973) (citations omitted) (emphasis added). *See also Carter–Wallace v. Hartz Mountain Industries,* 92 F.R.D. 67 (N.D.Ga. 1981) (Vining, J.); *Hodges, Grant & Kaufmann v. I.R.S.,* 768 F.2d 719 (5th Cir. 1985).[1]

As courts have recognized, the point at which the probability of litigation is substantial and imminent is not fixed, it varies depending on the nature of the claim and the type of information sought. *Carver v. Allstate,* 94 F.R.D. at 134; *See Westhemeco Ltd. v. New Hampshire Ins. Co.,* 82 F.R.D. 702, 708 (S.D.N.Y.1979).[2] The decision whether documents were "prepared in anticipation of litigation" turns, therefore, on the facts of each case. *Carver v. Allstate supra* at 134.

Where a party establishes that materials in its possession were prepared in anticipation of litigation, they may be discovered only if the party seeking discovery shows (1) a substantial need for them in order to prepare its case, and (2) virtual unavailability of the information from other sources without extreme hardship. Fed.R.Civ.P. 26(b)(3). Defendant has not attempted to

---

**1.** The controverted concept of "imminence" arose largely in response to the dilemma faced by parties and courts in the context of the discovery of insurance investigation reports. Because insurance companies and other businesses may be sued constantly, the ordinary course of their business often involves preparing documents with a general expectation of litigation. To draw the line between discoverable and nondiscoverable materials, many courts have adopted the temporal notion of "imminence." Likewise, courts have wisely distinguished between documents prepared in anticipation of litigation generally and those prepared in antici-

pation of some particular litigation, the former being discoverable if all the other requirements are met.

**2.** Additionally, an *ex post* look at the date of the filing of the suit is not a good indicia of "imminence" prior to suit because "insofar as the work-product is meant to promote expression of the theories of the case, it cannot properly be made to turn on whether litigation actually ensued." *Kent Corp. v. N.L.R.B.,* 530 F.2d 612 (5th Cir.1976) *cert. denied* 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287.

make such a showing. The resolution of defendants' motion, therefore, depends solely on the outcome of the "in anticipation of litigation" question.

In considering application of the foregoing principles to the facts of this case, three relevant time-periods of entries must be addressed: (1) those entries made after filing of the suit; (2) those entries made from the time plaintiff first retained counsel until suit was filed; and (3) those entries made from the point plaintiff asserts he began preparing for the bringing of this action.

1. November 26, 1986—August 29, 1987

■ Plaintiff raises both the attorney-client privilege and work-product privilege as objections to defendants' requests for pertinent diary entries made during time time. Plaintiff has shown that the entries sought either describe communications from attorneys who have represented plaintiff in this case; contain mental impressions, conclusions, opinions, and legal theories of his attorneys; or are based on communications from plaintiff's attorneys. (Moore Affidavit ¶¶ 4–6). Under both the attorney-client and work-product privileges, the court sustains plaintiff's objections and DENIES defendants' motion to compel.

2. September 9, 1986—November 26, 1986

■ Plaintiff asserts both the attorney-client privilege and work-product privilege for diary entries made during this time period. Plaintiff testified that he decided to sue on September 19, 1986. (Moore Affidavit ¶ 6). Plaintiff further testified that the entries made during these dates either describe or are based on conversations with plaintiff's attorneys, or contain legal theories involved in the case. (Moore Affidavit ¶¶ 4–7.) Under both the attorney-client and work-product privileges, the court sustains plaintiff's objections and DENIES defendants' motion to compel.

3. July 14, 1986—September 9, 1986

■ Plaintiff asserts the work-product privilege as an objection to production of diary entries made during these dates. Plaintiff testified that as reflected in his diary, beginning on July 14, 1986 he "began thinking about persons who could serve as witnesses, attorneys who could assist [him], and legal arguments that might be made on [his] behalf." (Moore Affidavit ¶ 6). During this period, plaintiff also spoke about suing to his daughter and son-in-law, both of whom are attorneys. *Id.* Plaintiff asserts that the entries reflecting these thoughts and conversations were made in anticipation of litigating this action. *Id.*

Under the legal standards set out above, the court believes the entries made during this period are privileged under the work-product doctrine. Plaintiff has demonstrated that these entries were made in contemplation of the litigation in this particular case. *Miles v. Bell Helicopter*, 385 F.Supp. at 1033. The mere fact that plaintiff's assertion of work-product includes the month and a half period before plaintiff retained counsel is not determinative. The particular facts of this case indicate that from July 14, 1986 onward there was a substantial probability that this litigation would be undertaken which became a certainty on September 19, 1986 when plaintiff definitely decided to sue. Suit was "imminent" under the meaning of the case authority on this issue beginning on July 14, 1986.

As the work-product privilege applies, the court sustains plaintiff's objections and DENIES defendants' motion to compel.

**CONCLUSION**

In sum, the court DENIES defendants' Motion to Compel Requests For Production of all respects.