Eleanor **CHAMBERS**, Plaintiff,

v.

**ALLSTATE INSURANCE COMPANY,** Defendant.

No. CIV.A.5:01–0494.

United States District Court, S.D. West Virginia, Beckley Division.

April 29, 2002.

Ron L. Tucker, Georgia Lee Gates, Fairmont, WV, for Plaintiff.

Tanya M. Kesner, Brent K. Kesner, Kesner, Kesner & Bramble, Charleston, WV, for Defendant.

## MEMORANDUM OPINION AND ORDER

VANDERVORT, United States Magistrate Judge.

Plaintiff sued Defendant in the Circuit Court of Raleigh County, West Virginia, on March 22, 2001, and Defendant removed the case to the District Court on May 31, 2001. Plaintiff alleges Defendant's improper cancellation of a policy of insurance covering her home, breach of contract, bad faith, unfair claims settlement practices and actual malice in refusing to pay upon her claim to insurance proceeds after fire destroyed her home. Defendant denies all of Plaintiff's allegations.

On February 11, 2002, Plaintiff filed a Motion to Compel the production of specified documents (Document No. 74.), and on March 27, 2002, Defendant filed a Motion for Protective Order Regarding Rule 30(b)(6) Depositions. (Document No. 102.) The parties have responded and replied, and their attorneys convened for a hearing upon the Motions on April 12, 2002. At the hearing, the Court ordered Defendant to deliver a copy of specific documents which Plaintiff identified as the subject of her Motion to Compel to the Court for an *in camera* examination in conjunction with the Court's consideration of the parties' Motions, and the Defendant has done so. Defendant also provided the Court with a copy of the additional documents which Defendant has identified as privileged against disclosure though Plaintiff is not seeking their disclosure through her Motion to Compel. The Motions are therefore ripe for consideration.

## BACKGROUND

Plaintiff had a policy of insurance with Defendant covering her home for a one year period from January 7, 1993, to January 7, 1994. On March 23, 1993, upon learning that Plaintiff's home was vacant, Defendant notified Plaintiff that it was cancelling her policy as of April 27, 1993. Plaintiff's home was destroyed by fire on April 16, 1993. Defendant's claim representative, Mr. Ken Shaffer, was suspicious about the fire's origin. On April 19, 1993, Defendant retained UBA Fire & Explosion Investigators to perform a "cause and origin investigation." A senior fire investigator with UBA examined the scene of the fire on April 21, 1993, and issued a Preliminary Report dated April 27, 1993, indicating that the fire was incendiary and was caused by a timing device. The same investigator issued a "Report of Investigation" dated May 21, 1993, stating that the fire was "a deliberate and intentional act of arson."

The State Police and Fire Marshal also investigated the fire, and Plaintiff was indicted on one count of first degree arson on July 16, 1993. At about the same time, Defendant contacted outside counsel about Plaintiff's claim and prosecution. Defendant was subpoenaed to produce documents, and Mr. Shaffer was called to testify at trial in the criminal proceedings. Defendant produced documents as required in conjunction with the State's investigation, which were in turn provided to Plaintiff. In testifying, Mr. Shaffer stated that he discussed whether Plaintiff would submit a Proof of Loss in view of the criminal charges with outside counsel on August 17, 1993. Plaintiff contends that these acts amounted to voluntary waiver of the work product immunity and attorney-client privilege with respect to all of Defendant's communications about Plaintiff's claim.

Plaintiff was convicted on November 17, 1993, and appealed. The West Virginia Supreme Court of Appeals reversed Plaintiff's conviction finding plain error in the Circuit Court's admission of evidence that Plaintiff agreed and then refused to submit to a polygraph test. *State v. Chambers,* 194 W.Va. 1, 459 S.E.2d 112 (1995).[1] Plaintiff states that she made a demand for policy limits on November 29, 1995, and made a further demand on December 1, 2000, alleging bad faith. (Memorandum in Support of Motion to Compel, p. 8.)

Over the years before Plaintiff filed her Complaint in this case, Defendant's agents communicated in writing about Plaintiff's loss and insurance coverage among themselves, with Defendant's outside attorneys and with UBA. Mr. Shaffer wrote to Mr. Larry Poynter, casualty claims manager and an attorney, to Mr. David Kersey, outside counsel, and to UBA and received correspondence from Mr. Kersey as well. UBA sent invoices to Defendant and Mr. Kermit Moore, outside counsel with Mr. Kersey. Mr. Shaffer was deposed during these proceedings and testified respecting Defendant's employment of UBA that "Allstate requests a cause and origin investigation on every fire." He testified further, as Plaintiff points out, that "[a] cause and origin is not just to determine arson. It's to determine the cause of the fire and whether there might even be potential subrogation from an accident fire." Plaintiff further claims that Defendant has never issued a formal denial of coverage.

Plaintiff served her First Set of Interrogatories and Requests for Production of Documents upon Defendant on September 10, 2001. (Document No. 27.) Defendant served its Responses to Plaintiff's Interrogatories and Requests for Production of Documents upon Plaintiff on October 15, 2001. (Document No. 36.) Defendant served Supplemental Responses to Plaintiff's Request for Production of Documents on January 21, 2002. (Document No. 55.) Initially, in responding to Plaintiff's Request for Production of Documents, Defendant submitted an Objection and Privilege Log stating as follows:

> Defendant, Allstate, in Responding to Plaintiff's Request for Production of Documents, has compiled the documents comprising its "claim file" into a single collection. For east (sic) of reference, all of the documents identified herein have been "Bate" stamped, with the page number in

---

1. The West Virginia Supreme Court of Appeals' decision is dated March 24, 1995.

the lower right corner and placed in order accordingly. Those documents not being produced are identified generally, along with the specific privilege or objection being asserted. It is the position of Allstate Insurance Company that the file . . . is, in its entirety, protected by the attorney client privilege and/or the work product doctrine. Accordingly, the file has not been included in these materials.

Defendant listed documents comprising 330 pages. Defendant's Supplemental Responses contained the same statement as quoted above and listed documents comprising 587 pages. Of the documents listed in Defendant's Log, Plaintiff seeks to compel disclosure of 23 documents comprising 52 pages. (Plaintiff's Reply Memorandum in Support of her Motion to Compel, pp. 9—10.) They are as follows:

1. A copy of invoices from UBA to Defendant regarding fees dated May 21, 2000, May 5, 1998, May 7, 1997, October 20, 1993, July 2, 1993, and May 21, 1993;

2. A copy of a letter from UBA to David Dailey regarding fees dated July 26, 1993;

3. A copy of a letter from Ken Whitt to Ken Shaffer dated May 21, 1993, regarding underwriting guidelines;

4. A non-redacted copy of Defendant's computer claim diary;

5. A copy of invoices from UBA to Defendant dated November 13, 1995, October 25, 1994, October 28, 1993, August 25, 1993, June 24, 1993;

6. A copy of a letter from David Kersey to Ken Shaffer dated January 12, 1994, regarding the status of the case with enclosure;

7. A copy of an invoice from UBA to Kermit Moore dated August 21, 1993;

8. A copy of a letter from Ken Shaffer to David Kersey dated August 17, 1993, regarding Plaintiff's claim;

9. A copy of a letter from David Kersey to Ken Shaffer regarding Plaintiff's claims with attachment;

10. A copy of a letter from Ken Shaffer to David Kersey regarding Plaintiff's claims;

11. A copy of a letter from Ken Shaffer to UBA dated June 3, 1993, regarding payment for services; and

12. A copy of a letter from Ken Shaffer to Larry Poynter dated May 11, 1993, regarding Plaintiff's claim;

13. A copy of a letter from Larry Poynter to Dan Hebel dated May 18, 1993.

Plaintiff has moved to compel the disclosure of these documents. Defendant resorts to the work product doctrine and attorney-client privilege contending that it had a suspicion early that arson was the cause of the fire which destroyed Plaintiff's home and that its "anticipation of litigation began within two weeks of its being notified of the fire and 'work product' protection applies from that time forward." (Defendant's Response to Plaintiff's Motion to Compel, p. 7.)[2] In addition to claiming waiver as mentioned above, Plaintiff contends that Defendant cannot claim that the subject documents were prepared in anticipation of litigation when Defendant did not issue a formal denial of coverage, and in any event, Defendant cannot be deemed to have contemplated this litigation with Plaintiff prior to December, 2000, when she made a demand on coverage alleging bad faith.

On March 7, 2002, Plaintiff filed Notices of Depositions of Rule 30(b)(6) Designees to be taken on March 26, 2002. (Document Nos. 86 and 87.) The Notices requested that the Deponents produce documents including Defendant's original claim file. The depositions were taken as scheduled, and on advice of counsel, the deponents refused to answer

---

**2.** Defendant also contends that Plaintiff's Motion to Compel is untimely in view of the Court's Local Rule of Civil Procedure 3.07 which requires that such motions be filed "within 30 days after the discovery response or disclosure was due . . . ." Plaintiff filed her Motion to Compel within 30 days after Defendant filed its Supplemental Responses to Plaintiff's Request for Production of Documents, and therefore the Court finds that Plaintiff's Motion to Compel was filed within the time prescribed by the Local Rule.

certain questions on grounds that the questions inquired into information covered by the work product doctrine and attorney-client privilege. On March 27, 2002, Defendant filed a Motion for Protective Order Regarding Rule 30(b)(6) Depositions. (Document No. 101.) Defendant filed an Amended Motion for Protective Order on April 3, 2002. (Document No. 102.) Plaintiff filed a Memorandum in Opposition to Defendant's Motion for Protective Order on April 11, 2002, and Defendant filed a Reply on April 12, 2002. (Document Nos. 104 and 105.) Basically, Defendant's Motion for Protective Order raises issues defensively which are presented by Plaintiff's Motion to Compel, namely, Plaintiff's entitlement to information and documents which, Defendant claims, are protected from disclosure under the work product doctrine or the attorney-client privilege. Defendant further contests Plaintiff's entitlement to "reserve" information on grounds that it is irrelevant.[3]

## DISCUSSION

### A. *PLAINTIFF'S MOTION TO COMPEL*

#### I. *Work Product Doctrine*

■ Federal case law applying Rule 26(b)(3) [4] of the Federal Rules of Civil Procedure defines the scope of the work product doctrine in this diversity case. The work product doctrine as set forth in F.R. Civ. Pro. 26(b)(3) does not protect documents from discovery unless they are prepared·in

---

**3.** Plaintiff's Notices of Deposition of Rule 30(b)(6) Designees requested, among other things, that Defendant designate someone to testify about "[w]hether a reserve was opened in connection with the fire at Ms. Chamber's home, and if so, the date the reserve was opened, the amount of the reserve, how the reserve was calculated, whether the reserve amount changed at any time throughout the history of the file and all policy manuals relied upon in determining the reserve amount[.]"

**4.** Federal Rule of Civil Procedure 26(b)(3) provides as follows:
Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indem-

anticipation of litigation or reveal the mental impressions, thoughts and conclusions of specified representatives in evaluating legal claims. The burden of proving the applicability of the work product doctrine rests with the party asserting it. Once proven, the burden shifts to the contesting party to prove substantial need for and inability to obtain the substantial equivalent of the materials by any other means.[5]

■ Determining whether specific documents are work product can be quite difficult, especially in litigation over insurance coverage decisions. *Video Warehouse of Huntington, Inc., v. Boston Old Colony Insurance Company*, 160 F.R.D. 83 (S.D.W.Va. 1994). While it is in the ordinary course of their business to investigate reported losses, as they reach decisions to deny coverage, insurers may reasonably anticipate that they will be sued over them. Considering competing policies in application of the work product doctrine in the context of a dispute between an insurer and reinsurer over the latter's refusal to pay for fire damage to a building, the Fourth Circuit stated as follows in *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 983–84 (4th Cir.1992):

[T]he jurisprudence of Rule 26(b)(3) ... divides work product into two parts, one of which is 'absolutely' immune from discovery and the other only qualifiedly immune. * * * [T]he pure work product of an at-

---

nitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering of such materials when the required showing has been made, the court shall protect against disclosure of the mental impression, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

**5.** Plaintiff contends that the documents in issue are not work product or privileged against disclosure, but if they are, Defendant waived the right to claim it. She does not claim in the alternative that she has substantial need for and inability to obtain the documents or the information they contain.

torney insofar as it involves 'mental impressions, conclusions, opinions, or legal theories ... concerning the litigation' is immune to the same extent as an attorney-client communication.... This is so whether the material was actually prepared by the attorney or by another 'representative' of the party.... All other documents and tangible things prepared in anticipation of litigation or for trial may be discovered, but only on a showing of 'substantial need.' Thus, in resolving the question of whether matters are immune from discovery because of a work product rule, attention must be turned first to whether the documents or tangible things were prepared in anticipation of litigation or for trial and then, for materials other than legal opinion or theory, to whether the requesting party has demonstrated a substantial need.

The Court further stated when a document is prepared in anticipation as follows:

> The document must be prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation. * * * Determining the driving force behind the preparation of each requested document is therefore required in resolving a work product immunity question.

*Id.*, at 984. *See also Kidwiler v. Progressive Paloverde Insurance Co.*, 192 F.R.D. 536, 542 (N.D.W.Va.2000)("[T]he document must be prepared under the 'substantial and imminent' or 'fairly foreseeable' threat of litigation.") The Fourth Circuit therefore stated the framework for analyzing work product issues as follows:

> In short, to resolve whether Rule 26(b)(3) grants immunity from discovery, the district court must determine, from an examination of the documents or their circumstances, whether they were prepared in anticipation of litigation or for trial. If so and if the documents embody opinions and theories about the litigation, discovery is refused without further inquiry. If opinions and theories are only part of a document otherwise discoverable, the court

may require production of a redacted copy. With regard to other documents falling within the scope of Rule 26(b)(3), the court must determine whether the requesting party has a substantial need for them, taking into account their relevance and importance and the availability of the facts from other sources.

*National Union Fire Ins. Co. of Pittsburgh, Pa.*, 967 F.2d at 985. It is clear therefore that Courts must proceed on a "case-by-case" basis in consideration of facts indicating the circumstances under which the requested documents were prepared or created and are sought in litigation and finally, upon *in camera* examination of the documents themselves, in consideration of the purpose and intent of the representatives in preparing or creating them. Judge Broadwater listed some of the facts deserving attention in the analysis as follows in *Kidwiler, supra*, at 542 (footnotes omitted):

> There is no hard and fast rule to determine the point in time when a document is created under the ordinary course of business, and therefore not protected by the work product doctrine, or under the anticipation of litigation, and therefore, protected by the work product doctrine. Therefore, the Court adopts a 'case-by-case' approach to this issue, and considers the following factors relevant in this analysis: 'the nature of the documents, the nature of the litigation, the relationship between the parties, and any other fact peculiar to the case' and, in addition, the involvement of counsel. Furthermore, the Court considers persuasive, in this analysis, the time when the document is created.

The parties cite several cases in their briefs in which Courts considered the application of the work product doctrine to documents prepared by insurers in investigating and evaluating claims of fire loss thought to be caused by arson. The undersigned finds these cases instructive. Defendant relies principally upon *Carver v. Allstate Insurance Company*, 94 F.R.D. 131 (S.D.Ga.1982), a first-party bad faith case arising out of Defendant's denial of coverage upon suspicion of arson. In *Carver*, an adjuster investigated

Plaintiff's fire loss claim from July 1 through August 26, 1981. He prepared "diary sheets" daily detailing his work. On August 26, 1981, Defendant referred the claim to a senior claims representative because it was evident through the adjuster's investigation that the fire was caused by arson and Plaintiff was involved. The senior claims representative continued the investigation preparing "diary sheets" and monthly "result forms", investigatory reports sent to Defendant's claims attorney. The Court considered whether the "diary sheets" and "result forms" of the adjuster, the senior representative and other employees of Defendant were work product. The Court held that Defendant had a reasonable anticipation of litigation after August 26, 1981, when the initial investigation by the claims adjuster revealed circumstances indicating that the loss was caused by arson and the claim was routed to the senior representative for further investigation. *Id.*, at 135. All "diary sheets" and "result forms" prepared before the claim went to the senior representative for investigation were discoverable, and those prepared thereafter were work product. *Id.*, at 136.

*Lett v. State Farm Fire & Casualty Company*, 115 F.R.D. 501 (N.D.Ga.1987), also cited by Defendant, is factually similar to *Carver*. Fire destroyed Plaintiffs' home on May 25, 1984. Defendants' employee was assigned to investigate, and he employed an independent expert to assist him in the investigation. Preliminary findings were referred to a claim superintendent, and on June 12, 1984, the investigation was assigned to Defendants' Special Investigation Unit and a copy of the claim file was sent to Defendants' attorney because of the Defendants' suspicion that the Plaintiffs were involved in the fire. In the litigation, Plaintiff noticed depositions of Defendants' employees requesting documents, and Defendants moved for a protective order claiming that the documents were prepared in anticipation of litigation. The Court concluded that Defendants reasonably anticipated litigation as of June 12, 1984, eighteen days after the fire, and declared those portions of the claims file prepared after that date work product.

At hearing, Defendant's counsel called *Ring v. Commercial Union Insurance Company*, 159 F.R.D. 653 (M.D.N.C.1995), to the Court's attention. In *Ring*, fire destroyed Plaintiff's hardware store on October 12, 1991. Defendants' adjuster inspected the property and learned of circumstances which caused him to become suspicious that the fire was caused by arson. The adjuster employed an expert to investigate. On October 16 or 17, he met with Plaintiff, and Plaintiff refused to answer questions on advice of counsel. The adjuster hired an attorney on October 22, 1991, to give Defendants legal advice respecting the investigation. Plaintiff was indicted on charges of arson and filing false claims on March 16, 1992. On April 3, 1992, Defendants denied her claim. She was tried and acquitted in December, 1992. Plaintiff sued alleging breach of contract and bad faith. Defendants withheld documents after October 17, 1991, when they claimed they reasonably anticipated litigation. In view of facts which led Defendants to suspect arson and that Plaintiff was responsible, the Court concluded that Defendants anticipated litigation by October 17, 1991, five days after the fire. *Id.*, 656–57.

Defendant also mentions *Dunn v. State Farm Fire & Casualty Company*, 122 F.R.D. 507 (N.D.Miss.1988). In *Dunn*, fire destroyed Plaintiff's home on February 3, 1986, and Plaintiff's husband gave Defendant notice of the loss the next day. On February 5, 1986, Defendant assigned an adjuster to investigate the claim, and the adjuster, suspicious respecting the cause of the fire, asked an arson specialist to look into it. On February 10, 1986, the adjuster learned that Plaintiff's husband admitted to the police that he had intentionally set the fire, and Defendant retained attorneys to advise it respecting its legal obligations while it considered the claim. Defendant denied the claim in August, 1986, and Plaintiff sued alleging bad faith. In discovery, Plaintiff requested the documents which Defendant and its attorneys prepared before she filed suit. The District Court concluded that Defendant reasonably anticipated litigation from the date it learned of Plaintiff's husband's confession, and consequently documents prepared thereafter by and for Defendant's attorneys, in-

cluding those prepared by Defendant, were work product. A claims committee report prepared in the ordinary course of evaluating the claim was not, however, except to the extent that it related the attorneys' evaluation of the claim.

Plaintiff relies upon *State Farm Fire and Casualty Company v. Perrigan*, 102 F.R.D. 235 (W.D.Va.1984), and *Front Royal Insurance Company v. Gold Players, Inc.*, 187 F.R.D. 252 (W.D.Va.1999), neither of which are first-party bad faith cases. *Perrigan* was a suit for the recovery of payment of insurance proceeds upon a fire loss claim. The Court deemed an adjuster's report made 10 days after the fire occurred containing opinion and speculation respecting the cause and origin of the fire and recommended action for the insurance company discoverable. The Court stated that "[t]he insurer had not decided whether to pay the loss let alone whether to bring an action arising from a payment under the policy." *Perrigan*, 102 F.R.D. at 239. In *Front Royal Insurance Company v. Gold Players, Inc.*, 187 F.R.D. 252 (W.D.Va.1999), a declaratory judgment action against the lessee of commercial property over coverage for fire loss under suspicion of arson and allegations of first-party bad faith by counterclaim, the Court considered whether documents in Plaintiff's internal claim file, correspondence and information to its reinsurance carrier and statements of potential witnesses taken by an investigator retained by Plaintiff's counsel were work product. The fire occurred on or about December 29, 1996. The original notice of loss indicated that the fire was caused by arson but did not indicate who had started the fire. Plaintiff did not notify Defendant that it would not pay the claim until February, 1998, when it filed suit. The Court recognized that there was a "distinct possibility" of litigation from the start, but the possibility did not become "substantial and imminent" until Plaintiff decided not to pay the claim. The Court held that the contents of Plaintiff's internal claims file, documents prepared in the ordinary course of investigating the claim prior to February, 1998, were not work product.

In researching the cases discussed above, the undersigned also read *Harper v. Auto–Owners Insurance Company*, 138 F.R.D. 655 (S.D.Ind.1991), and *Garvey v. National Grange Mutual Insurance Company*, 167 F.R.D. 391 (E.D.Pa.1996), both dealing with work product issues in the context of disputes over coverage of fire losses thought to be caused by arson. In *Harper*, fire destroyed Plaintiff's business on February 1, 1987, and that same day, the fire department reported the cause as arson. Defendant employed independent experts to investigate the fire, and on February 6, hired private counsel to assist in evaluating the claim. Defendant decided to deny coverage on April 3, 1987, and sent a denial notice on April 14. Plaintiff sued alleging bad faith claiming that Defendant had insufficient evidence that he was responsible for the arson. In discovery, Plaintiff requested all of the documents in Defendant's claim file, and Defendant resisted on grounds that the documents were work product and subject to the attorney-client privilege. Defendant claimed that all documents prepared after it received notice that the cause of the fire was arson (the day of the fire) were prepared in anticipation of litigation. The Court concluded, however, that Defendant did not reasonably anticipate litigation before it sent its denial notice on April 14, 1987, two and a half months after the fire, and ordered all documents prepared before that date to be produced. The Court stated that "all reports, investigations and documents produced before this time which comprise any part of a factual inquiry or evaluation of the Plaintiff's claim were prepared for the purpose of reaching a final decision on the claim in the ordinary course of business and, thus, not work product." *Id.*, at 665. The Court reasoned that Defendant did not know that Plaintiff was responsible for the arson and did not prove that investigations were not conducted to arrive at a claims decision and were conducted "solely to prepare for litigation." *Id.*, at 667–68. The Court distinguished *Carver* factually noting that in *Carver* the Defendant conducted an investigation and then denied coverage whereas in *Harper* the Defendant claimed documents were work product which were produced before the investigations and evalu-

ations were started. *Id.,* at 670. The Court disagreed with *Carver* and criticized Courts generally for "overlook[ing] the Rule's requirement of a causation relationship between the documents' production or use and the impending litigation. The Rule requires a court to pursue such an inquiry into each document for which the immunity is claimed and places the burden of proof on the insurer." *Id.,* at 670–671.

In *Garvey,* fire destroyed Plaintiff's business on June 29, 1993, and Defendant apparently prepared a "Property Loss Notice" on June 30, 1993. Defendant investigated the loss and denied coverage on October 20, 1994. Plaintiff sued alleging breach of contract, bad faith and deceit. In discovery, Defendant withheld certain documents as subject to the work product doctrine and/or the attorney-client privilege. Plaintiff moved to compel, and Defendant moved for a protective order. Defendant claimed that the documents were prepared in anticipation of litigation. Plaintiff claimed that they were not because they were prepared prior to October 20, 1994, the date when Defendant denied coverage. In any event, Plaintiff argued that they should be disclosed because Plaintiff had substantial need for them. The Court concluded that Defendant reasonably anticipated that litigation would occur on July 1, 1993, two days after the fire, and required disclosure of only the "Property Loss Notice" and notations made prior to that date on claim evaluation sheets. The Court further found that Plaintiff had ample opportunity to learn the basis for Defendant's decision to deny coverage through "alternative means", i.e., discovery including depositions of Defendant's agents, and therefore did not prove substantial need.

■ Most Courts considering when Defendants reasonably anticipated litigation in cases of this nature have not focused upon whether or when the insurer formally denied coverage. Rather, insurers are perceived as acting upon a "substantial and imminent" or "fairly foreseeable" threat of litigation when it becomes evident to them initially that the losses were caused by arson and the insured was involved in it. In this case, though it was Defendant's general practice to conduct a cause and origin investigation in all cases of fire loss as Mr. Shaffer testified, it was almost immediately evident circumstantially that arson was the cause of the fire and Plaintiff may have been involved. The fire occurred after Defendant sent its notice of cancellation and before the date Defendant set for the termination of coverage, and other *indicia* reasonably caused Defendant to be suspicious. Defendant had confirmation that the fire was caused by arson through the initial report of UBA dated April 27, 1993. It was "fairly foreseeable" therefore to Defendant right after the fire that it would deny coverage. Consequently, Defendant must be deemed to have had a reasonable anticipation of litigation well before May 11, 1993, the date of the earliest document in issue, the letter from Mr. Shaffer to Mr. Poynter.

Accordingly, upon an *in camera* examination of all of the documents in issue, the Court finds that they consist of communications between Defendant's representatives and attorneys in conjunction with Plaintiff's loss and claim after Defendant reasonably perceived that the circumstances could result in litigation. All of the documents in issue are therefore immune from disclosure under the work product doctrine. It remains to determine whether some or all of them must nevertheless be disclosed through Defendant's subpoenaed disclosure of documents and Mr. Shaffer's testimony in Plaintiff's criminal trial, which Plaintiff contends amounted to Defendant's waiver of the right to withhold the subject documents. The concept of waiver is basically the same in application with respect to the work product doctrine and the attorney-client privilege, and therefore the Court will discuss it below.

## II. *Attorney–Client Privilege*

■ West Virginia law determines the scope of the attorney-client privilege in this case. The West Virginia Supreme Court has identified four circumstances which must have occurred for communications to be covered by the attorney-client privilege:

1. Both parties must have contemplated that the attorney-client relationship did or would exist;

2. The advice must have been sought by the client from the attorney in his capacity as a legal adviser;

3. The communication between the attorney and the client must have been identified to be confidential;

4. There must be no evidence that the client intentionally waived the privilege.

*State v. Burton,* 163 W.Va. 40, 254 S.E.2d 129, 135 (1979); *State ex rel. Doe v. Troisi,* 194 W.Va. 28, 36, 459 S.E.2d 139, 147, n. 11 (1995); *State ex rel. United States Fidelity and Guaranty Company v. Canady,* 194 W.Va. 431, 442, 460 S.E.2d 677, 688 (1995). The Fourth Circuit has adopted a similar standard. *See Hawkins v. Stables,* 148 F.3d 379, 383 (4th Cir.1998); *In Re Allen,* 106 F.3d 582, 600 (4th Cir.1997).

■ The Court finds that certain of the documents in issue are communications between Defendant's representatives and its outside attorneys intended to be confidential. These documents are covered by the attorney-client privilege. The question therefore remains whether Defendant waived the protection against disclosure by providing documents and information in conjunction with Plaintiff's prosecution.

■ As a general rule, the voluntary disclosure of work product or an attorney-client communication constitutes a waiver of the immunity and privilege as to all other communications on the same subject. *State ex rel. McCormick v. Zakaib,* 189 W.Va. 258, 261, 430 S.E.2d 316, 319 (1993) (Parties' disclosure of information to adversary in litigation constituted waiver such that documents withheld covering the same subject matter should also be disclosed and former employee who gathered information while an employee and thereafter became adversaries' expert could testify about the information in litigation.) The Fourth Circuit makes a clear distinction between opinion and non-opinion work product in the context of subject matter waiver. There is subject matter waiver when a party discloses non-opinion work product to an adversary, but there is no subject matter waiver of opinion work product. *In re Martin Marietta Corp.,* 856 F.2d 619, 623, 625–26 (4th Cir.1988) (Former employee under indictment for fraud subpoenaed documents from Martin Marietta, portions of which had been disclosed to the Government when Martin Marietta was facing possible criminal charges. Subject matter waiver occurred as to attorney-client privilege and non-opinion work product by virtue of Martin Marietta's disclosure to the Government.) Waiver does not necessarily occur, however, under "less adverse circumstances." *Id.,* at 625. The work product immunity and attorney-client privilege are not waived by exchange of documents and information between persons with common interests in the subject matter. *In Re Doe,* 662 F.2d 1073, 1081 (4th Cir.1981)("Disclosure to a person with an interest common to that of the attorney or the client normally is not inconsistent with an intent to invoke the work product doctrine's protection and would not amount to such a waiver. . . . [W]hen an attorney freely and voluntarily discloses the contents of otherwise protected work product to someone with interests adverse to his or those of his client, knowingly increasing the possibility that an opponent will obtain and use the material, he may be deemed to have waived work product protection.")

■ Upon an *in camera* examination of the documents which are the subject of the Plaintiff's Motion to Compel, the Court finds that they are covered by the work product immunity and/or the attorney-client privilege. The Court further finds that Defendant did not waive the immunity and privilege either by providing documents and information to the Fire Marshal and the Prosecuting Attorney or by Mr. Shaffer's testimony in conjunction with the investigation and Plaintiff's prosecution. Defendant, the Fire Marshal and the Prosecuting Attorney shared common interests. They were all interested in determining the cause of the fire which destroyed Plaintiff's home. They were not adverse at all. While Defendant surely understood that the Prosecuting Attorney would likely provide to Plaintiff information which it had provided to the Prosecuting Attorney in discovery in the criminal proceedings, it cannot be deemed to have consciously intended that the disclosure by the Prosecuting Attorney would amount to the waiver of the

work product immunity and attorney client privilege in this subsequent litigation with Plaintiff. Further, the Court finds, Mr. Shaffer's testimony did not reveal any facts or opinions subject to protection. Mr. Shaffer simply related in testifying that he had a conversation with Mr. Kersey, Defendant's counsel, during which they discussed whether or not Plaintiff would file a Proof of Loss in view of the criminal proceedings against her. Nothing was discussed in addition to what was already known, and therefore nothing was waived. Plaintiff's Motion to Compel will therefore be denied.

## B. *DEFENDANT'S MOTION FOR PRO-TECTIVE ORDER*

Nothing prohibits Plaintiff in this case from inquiring respecting facts contained in investigatory documents through depositions of Defendant's claim representatives, investigators and the witnesses they interviewed. *See Carver v. Allstate Insurance Company*, 94 F.R.D. 131, 136 (S.D.Ga. 1982). Plaintiff is therefore not at a loss to learn the facts which Defendant knew in investigating and evaluating her claim. Plaintiff simply cannot have the information through the disclosure of the documents which she has sought to compel and to have produced by her Notices of Rule 30(b)(6) Depositions, especially insofar as they indicate directly and indirectly the thoughts, mental impressions and opinions of Defendant's representatives about her claim.

The Court is hampered, however, in consideration of Defendant's Motion for Protective Order because neither party has provided the Court with a copy of the deposition transcripts and identification of and discussion about the specific questions which should or should not have been answered. The Court cannot determine the propriety of the deponents' refusals to answer certain questions therefore. The Court can only say generally that the deponents' refusals to answer were proper if the questions inquired into the thoughts, opinions and mental impressions of Defendant's representatives about Plaintiff's loss and claim. The refusals to answer were improper if the questions inquired into facts mustered in Defendant's investigation into Plaintiff's loss and claim. Defendant's Motion for Protective Order will therefore be denied insofar as it seeks the Court's determination that the Plaintiff inquired into matters covered by the work product doctrine and attorney-client privilege and that deponents properly refused to answer the questions. The Defendant's Motion will be granted insofar as the Defendant seeks protection against disclosure of the same documents which are the subject of Plaintiff's Motion to Compel. Respecting Plaintiff's request for "reserve" information, Defendant's Motion for Protective Order will be granted. The Court in *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 400—402 (8th Cir.1987), distinguishing between "aggregate reserve information" and "individual case reserve figures" deemed the latter work product because they "revealed the mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim." *Id.*, at 401. Plaintiff in this case is seeking "reserve" information specific to her loss and claim.

Accordingly, it is hereby **ORDERED** that Plaintiff's Motion to Compel is **DENIED** and Defendant's Motion for Protective Order is **GRANTED IN PART** and **DENIED IN PART**. The Court hereby further **ORDERS** that the documents submitted for examination *in camera* are **FILED UNDER SEAL** for further examination *by the District Court* to the extent that the parties contest this ruling *and no one else*.

The Clerk is hereby directed to send a copy of this Memorandum Opinion and Order to counsel of record and post this opinion at http//www.wvsd.uscourts.gov.